## *In re* WILLIAM H. SNELL.

*Incorporated Village. Billiard Playing. Selectmen. General Law Repealed by Charter.* R. L. ss. 4068—70. *Constitutional Law.*

1. A village charter authorizing it to "suppress and restrain * *' * all descriptions of gaming," repeals by implication an earlier statute empowering the selectmen to permit or forbid the use of billiard tables. The grant of power to restrain gaming confers the right to license billiard playing.*

2. The Act of 1884, No. 112, authorizing the governor to appoint special prosecutors of criminal offenses, is not in conflict with that article of the Constitution which requires that "State's attorneys shall be elected," etc.†

3. The fourth section of the act is not passed upon. (*Bennington* v. *Smith*, 29 Vt. 254, distinguished.)

HABEAS CORPUS. The petition was brought before VEAZEY, J., and was continued and heard at the General Term, 1885. The petitioner set forth, that he was imprisoned in the county jail by virtue of a *mittimus* issued by a justice of the peace; and that he had been complained against by a special prosecutor.

The original complaint and *mittimus* were also set out, by which it appeared that the relator was the owner of billiard tables in a saloon situate in the village of Middlebury; that the selectmen of the town of Middlebury had forbidden him to use the said billiard tables, and had lodged a certificate of the notice in the town clerk's office, etc., in accordance with the statute; that the relator used

---

* Section 9 of village charter is: "Said village shall have power, 1, to make, establish, etc. * * * 2. To suppress and restrain disorderly and gaming houses, and all descriptions of gaming."

† By this act it was made the duty of the governor, on the petition of twenty legal voters, to appoint special prosecutors of criminal offenses, who should have the same power as town grand jurors; and by sec. 4, such prosecutors could "appear in the County and Supreme Courts in prosecutions by them instituted, and there control the trial and disposition of such cases," etc., assisted by the state's attorney.

the said billiard tables thirty-two days after he had been so forbidden by the selectmen; that the relator was brought before a justice of the peace, and was ordered by him to find sufficient sureties in the sum of $400 for his appearance before the County Court; that, having neglected to furnish the sureties, he was committed to jail for his appearance at the said court.

*Stewart & Wilds* and *Eldridge & Slade,* for the relator.

The Act of 1884 violates that article of the Constitution which requires that " State's attorneys shall be elected by the freemen." It is an attempt to usurp the powers and duties of state's attorneys. The legislature cannot provide for the choice of officers a different mode from that prescribed by the Constitution. Cooley Con. Lim. 78; *People* v. *Raymond,* 37 N. Y. 428; *Devoy* v. *New York,* 39 Barb. 169; *S. C.* 22 How. Pr. 226; *People* v. *Blake,* 49 Barb. 9; *People* v. *Albertson,* 55 N. Y. 50; 117 Mass. 603; 40 Wis. 124.

Nor can it confer the characteristic duties of an officer upon another. *Warner* v. *People,* 2 Denio, 272; *Sprague* v. *Brown,* 40 Wis. 612; *State* v. *Branst,* 26 Wis. 413; *S. C.* 7 Am. Rep. 84; *People* v. *Flannagan,* 66 N. Y. 237; Cooley Con. Lim. 216; *Jones* v. *Robbins,* 8 Gray, 338.

The 9th section of the charter suspends the power given by the general law to the selectmen over the village. *Ward* v. *State,* 17 Ohio St. 32.

Power to restrain implies power to license. *Smith* v. *Madison,* 7 Ind. 86; *St. Louis* v. *Smith,* 2 Mo. 113; 1 Dill. Mun. Cor. 365; 50 Ill. 28; *Emporia* v. *Volmer,* 12 Kan. 622.

The power to regulate cannot exist in two independent bodies. *Daw* v. *Metropolitan Board,* 104 E. C. L. 162; *State* v. *Clarke,* 54 Mo. 17; *S. C.* 14 Am. Rep. 471; 1 Dill. Mun. Corp. s. 88; *Ex parte McNair,* 13 Neb. 195.

*Edward Dana,* for the State.

Under the Bill of Rights, art. 5, the legislature can pass

*In re* Snell.

laws regulating the internal police. *Lincoln* v. *Smith*, 27 Vt. 337; Cooley Const. Lim. s. 706; *State* v. *Peterson*, 41 Vt. 504.

The legislature has made provision for town grand jurors as informing and prosecuting officers; and has the right to make provision for other similar officers. *State* v. *Douglas*, 26 Wis. 428; *People* v. *Morrell*, 21 Wend. 563.

The authority of grand jurors as informing officers has never been questioned. The legislature may add to their duties, or establish other officers to perform part of them. *Wales* v. *Belcher*, 3 Pick. 508; 8 Gray, 1; 117 Mass. 604; *Hyde* v. *State*, 52 Miss. 673; 52 Ala. 79; 15 Iowa, 553.

While the Constitution provides for the election of state's attorneys, their duties have always been defined by the legislature. The state's attorney may be excluded entirely from the prosecution of offenses. *In re Barker*, 56 Vt. 26.

The opinion of the court was delivered by

TAFT, J. 1. The law of this State authorizes the selectmen of any town to permit the use of billiard tables, under regulations prescribed by them, R. L. s. 4070; or they may forbid the use of them, s. 4068.

This law being in force, the village of Middlebury was chartered and given the power to pass by-laws to suppress and restrain all descriptions of gaming, which clearly include the game of billiards.

The word restrain, when used as it is in the village charter, has been held to confer the power to license. *Smith* v. *The City of Madison*, 7 Ind. 86; *The City of Emporia* v. *Volmer*, 12 Kan. 622; *State* v. *Clarke*, 54 Mo. 17. It is not synonymous with suppress, but contemplates the continued existence of the business, placing it within bounds; in effect licensing it.

The powers conferred upon the selectmen and the village corporation are substantially the same; and if the claim of the prosecutor is the correct one, then each has the power to license, or suppress, gaming in the village limits.

It can hardly be supposed that the legislature intended such a result. The provision in the charter derogates from, and is inconsistent with, the general law; and the legislature must have intended by it to repeal the latter, as to the territory embraced in the village limits.

The case of *Daw* v. *Metropolitan Board*, 104 E. C. L. 162, is similar to the one at bar. The question was, which of two public boards had power to number the houses in certain streets. The court say: "Where two statutes give authority to two public bodies to exercise powers which cannot consistently with the object of the legislature co-exist, the earlier must necessarily be repealed by the later statute. The purpose of numbering houses is to distinguish them from each other; and, if the two boards had each the power to alter the numbers, that purpose would be frustrated."

In this case, if the general law was not repealed by the charter, the selectmen could suppress, and the village license, or the village suppress, and the selectmen license, by contemporaneous action.

Such a state of affairs could never have been contemplated by the legislature. The acts are repugnant, and the former is superseded by the latter. In *Bennington* v. *Smith*, 29 Vt. 254, the selectmen of the petitioning town laid out a highway in the village of Bennington, whose charter invested the trustees of the village with the same power and authority over highways within the village limits that the selectmen by general law had over the town. It was held that the power of the selectmen over the subject was not taken away by the village charter; but it was put upon the ground that there was no provision for compelling the village by indictment to keep its highways in repair, or for maintaining an action against it for losses sustained by reason of defects therein, or for laying highways continuously, part of which lay within the limits of the village and part without. Such cogent reasons for a like

*In re* Snell.

holding do not exist in the present case; and by the general rules for the construction of statutes, above referred to, we must hold that the authority of the selectmen over the billiard tables was taken away.

2. This prosecution was commenced by a special prosecutor, appointed under Act No. 112, passed at the session of 1884; and the relator claims that the act is in conflict with that article of the Constitution which requires that " State's attorneys shall be elected by the freemen of their respective counties." We think the legislature have power to provide for the commencement of prosecutions by other officers than state's attorneys, as they have done since the early days of the government; and require their election by the people, as in the case of town grand jurors, or appointment by the governor, as under the act in question. Vacancies in most, if not all, elective offices are now filled by appointment; in some cases by the governor, in other cases by the judges or selectmen.

As to the propriety of the act in question we have nothing to do. We simply decide that the legislature have power to provide for the commencement of prosecutions by informing officers not elected by the people. The question of the constitutionality of the fourth section of the act, giving power to the special prosecutor to control the trial and disposition in the higher courts of the cases begun by him, is not before us.

The selectmen having no authority in the matter, their action was unauthorized; the relator was illegally imprisoned, and it is ordered that he be discharged.