STATE *v.* RUTLAND RAILROAD COMPANY.

STATE *v.* CENTRAL VERMONT RAILWAY COMPANY.

October Term, 1908.

Present: ROWELL, C. J., MUNSON, and WATSON, JJ., and MILES, Superior J.

Opinion filed November 21, 1908.

*Railroads—Taxation—Construction of Statutes—P. S. 713-714*
*—Construction—Voluntary Payments—Distinguished From*
*Compulsory Payments under Required Options.*

In aid of the construction of a statute of doubtful import, judicial
notice may be taken of its legislative history and of the contem-
poraneous practical construction of its provisions given by the
administrative officers charged with its application and enforce-
ment.

It is to be presumed that the Legislature, in amending or modifying
a statute, had in mind the prior contemporaneous practical con-
struction given it by the administrative officers charged with its
application and enforcement.

In construing a statute, if it is possible to do so, effect should be given
to every word, clause, and sentence.

The mere fact that payment under P. S. 714 is optional does not make
payments thereunder voluntary; for the option there given to pay
on gross earnings is, when exercised, as mandatory as the tax on
property and franchise under P. S. 713, when said option is not
exercised, and money paid under either section is a tax.

Where, in actions against two railroad corporations for taxes claimed
to be due as assessed on property and franchise, under P. S. 713, it
appeared that each defendant seasonably elected to accept the pro-
visions of P. S. 714, but that one paid the State the amount of the
tax computed with a rate determined by the gross earnings of the
respective semi-annual periods at the expiration of which the
several payments were payable, instead of the amount properly
computed with the rate determined by the gross earnings for the
full fiscal year, and that the other computed in the same way, and
paid the State the major part, but not the full amount, of the tax

so computed, defendants were not thereby deprived of the option to pay on gross earnings, under P. S. 714, and compelled to pay the tax assessed by P. S. 713 on property and franchise.

Under P. S. 714, providing that, "for each fiscal year," a person owning or operating a railroad located wholly or partly within this State may, in lieu of the tax assessed by P. S. 713 for each such year on its corporate property and franchise pay to the State two and one-half per cent of such part of its total gross earnings as does not exceed $2,000 per mile of its roadbed in this State, with provisions for higher rates graduated according to specified increases in gross earnings per mile of its roadbed in this State, and providing that any such person accepting those provisions shall make returns of such gross earnings for the semi-annual periods specified, and within 30 days thereafter pay to the State treasurer the required percentage thereof, the rate of taxation is to be determined according to the gross earnings per mile for the full fiscal year for which the tax is to be paid, and not for the semi-annual period at the expiration of which a particular payment is to be made.

DEBT for taxes alleged to be due on assessment made by P. S. 713. Heard on agreed statements of facts at the August Term, 1908, Grand Isle County, *Haselton*, J., presiding. Judgment in each case for the plaintiff. The defendant is each case excepted. The opinion states the case. The exceptions in both cases were heard together.

*H. H. Powers* for the Rutland Railroad Co., and *Hunton & Stickney* for the Central Vermont Railway Co.

*Clarke C. Fitts*, Attorney General, and *Hale K. Darling* for the plaintiff in each case.

It is a familiar canon of interpretation that all former statutes on the same subject, whether repealed or unrepealed, may be considered in construing the provisions that remain in force. *Vitterbo* v. *Friedlander*, 120 U. S. 725; *Ex parte Crow Dog*, 109 U. S. 556; *State* v. *Hostetter*, 137 Mo. 636, 59 Am. St. Rep. 515.

The repeated use of the term "fiscal year" is significant as defining the nature of the tax. There is a presumption that the

meaning of a word repeatedly. used in the statute is identical in all places. "One of the most familiar rules relating to the interpretation of statutes is that a word or phrase repeatedly used in the same statute is presumed, in the absence of clear intent to the contrary, to have the same meaning throughout; amended statutes are to be regarded as a part of the original statute within the meaning of this rule." *Brown* v. *Turner*, 174 Mass. 161; *Reich* v. *Smyth*, 13 Wall. 162; *Rhodes* v. *Weldy*, 46 Ohio St. 242; *Pitle* v. *Shipley*, 46 Cal. 154; *In re Kirkstall Brewing Co.*, 5 Ch. Div. 535; Endlich's Interpretation of Stat. §387.

In §§713 and 714, the description of the tax is identical, that is, "for each fiscal year." These sections being placed in juxtaposition, and being *in pari materia*, are to be treated as if embodied in one section, "because statutes must be construed with reference to the whole system of which they form a part." *St. Louis* v. *Howard*, 119 Mo. 41, 41 Am. St. Rep. 630; *Highgate* v. *State*, 59 Vt. 39; *Wilkins' Admr.* v. *Brock*, 79 Vt. 57; *Vane* v. *Newcombe*, 132 U. S. 235; *Smith* v. *People*, 47 N. Y. 333; *Whitcomb* v. *Rood*, 20 Vt. 49.

If two constructions of the statute are possible, that should be adopted which is more in accord with the declared and recognized policy of the state. *Meronway* v. *Atl. Building Asso.*, 47 Am. St. Rep. 841; Endlich's Interpretation of Stat. §113.

As defendant did not comply with the conditions giving it the right to pay on gross earnings, it cannot now claim the benefit of this option, and is liable for the tax on the appraisal.

Payment on gross earnings is purely voluntary, and no method is provided whereby the State may enforce it. It is analogous to the option a taxpayer has of paying taxes to the town treasurer and saving the discount. *Brookfield* v. *Bigelow*, 80 Vt. 428; Lee Templeton, 13 Gray 476.

The fact that the State has accepted what the defendant has seen fit to pay does not bar defendant's primary liability, for the money has not been accepted with the intention that it should operate as a satisfaction. *Miller* v. *Holden*, 18 Vt. 337; *Gowing* v. *Thomas*, 67 N. H. 339; *Widdigen* v. *Boston etc. Co.*, 100 Mass. 422; *Howe* v. *MacKay*, 5 Pick. 44; *Duluth etc. Co.* v. *Knowlton*, 42 Minn. 229; *Murphy* v. *Little*, 69 Vt. 261; *Conn. River Lumber Co.* v. *Brown*, 68 Vt. 239; *McDaniels* v. *Lapham*, 21 Vt. 222; *McGlynn* v. *Billings*, 16 Vt. 329.

WATSON, J.  By P. S. 713, for each fiscal year beginning with the first day of January, a tax is assessed upon the property and corporate franchise of each person or corporation owning or operating a railroad located in whole or in part within this State, at the rate of one per cent of the appraised value thereof, payable semi-annually.  By sec. 714, for each such year a person or corporation thus owning or operating a railroad so located, may, in lieu of the tax assessed in the preceding section, pay to the state in the manner and at the times specified in the third following section (717) two and one-half per cent of such part of the entire gross earnings derived from all sources as does not exceed two thousand dollars per mile of the roadbed of such railroad located within this State, with provisions for graduated rates according to specified increase in the gross earnings per mile.  And by sec. 717, such person or corporation accepting the provisions of section 714 shall make returns of the gross earnings of such railroad for semi-annual periods specified, and shall within thirty days thereafter pay to the State Treasurer the percentage of such gross earnings provided in the section last named.

One question is whether under section 714 the tax is to be rated according to the gross earnings per mile for the full fiscal year, or only for the semi-annual period on which the particular payment is to be based.  The meaning of the statute in this respect being in doubt, we consult the legislative history of the law taxing railroads in this State during the last quarter of a century and any contemporaneous practical construction given by the officers charged with the application and enforcement of its provisions,—all of judicial notice,—as aids in arriving at the true intention of the statute under consideration.

The first enactment of a similar nature that has come to out attention is No. 1, Laws of 1882, of which sec. 11 provided that every corporation, person or persons owning or operating a railroad in this State should pay a tax on the entire gross earnings of such railroad if situated wholly within this State; and if situated partly within and partly without the State the tax should be upon such proportion of the entire gross earnings as the mileage of the trains run in the State bore to the mileage of all trains run on the entire line of road.  By sec. 12 the tax was to be rated according to the earnings per mile of road in this State, and assessed at the rate of two per cent on the first two

thousand dollars a mile of total earnings if less than that sum; and at a graduated rate on the gross earnings above that sum, in this respect essentially like the law now in force. And by sec. 13 the tax was payable one-half semi-annually, and to be based upon the gross earnings during the six months terminating at times specified. The law of sec. 12 was reenacted with some additions as a part of No. 5, Laws of 1884; however as far as material here the law continued the same.

The tax thereunder was not in terms characterized as either annual or semi-annual; yet from the time of its original enactment until the fall of 1890, when the law so far as it sought to tax earnings derived from interstate commerce was declared unconstitutional (*Vermont & Can. R. R. Co.* v. *Cen. Vt. R. R. Co.,* 63 Vt. 1; S. C. 159 U. S. 630, 40 L. ed. 284), the successive Commissioners of State Taxes construed the statute as laying a semi-annual tax and acted upon this construction in its execution.

No. 3 of the Laws of 1890, entitled "An act to provide a revenue for the payment of State expenses," was approved November 26 and took effect from its passage. That act was a revision of the whole subject-matter of taxation for the purpose named in the title and was intended as a substitute for the law of 1882 and amendments and additions thereto; and the latter law, as far as it related to taxes on the gross earnings of railroads,—beyond this we have no occasion to speak,—was by implication repealed thereby (*Barton National Bank* v. *Atkins,* 72 Vt. 33), except that by section 46 of the new act the liabilities of companies and persons to pay to the State taxes which accrued prior to July 1, 1890, under the law then existing were not to be affected. That the Legislature intended such a repeal of the previous law is clearly shown by thus expressly continuing it in force as to the liabilities for taxes imposed under it.

By the act of 1890 provision was made for the assessment of a tax upon the appraisal of the property, taking into consideration the corporate franchise, of a railroad in this State, payable semi-annually (sec. 14), with the further provision that in lieu of the tax thus assessed the owner or operator of such railroad might "annually" pay to the State a named arbitrary percentage on the gross earnings thereof. Sec. 17. And if the provisions of this optional privilege were accepted, semi-annual returns of the gross earnings were required, and within a time

limited thereafter the percentage paid for the period covered by said returns. Sec. 18. The law of these sections became sections 19, 20, and 21 of Act No. 20, Laws of 1902, without change material here, except that in section 19 the tax on the appraisal was in terms also to be "annually" assessed. Nor so far as material here was the law of 1902 changed by No. 29, Laws of 1904, except that instead of the provision being as before that such optional tax might be paid "annually," it was "for the fiscal year beginning with the first day of January, 1905, and for each year thereafter"; and if such option for the first six months of the year was not accepted, it could not be for the rest of the year. Sec. 5. In 1906 the statute was amended to read as it now does with some immaterial change of language in the general revision (Laws of 1906, No. 37, sec. 1, P. S. 714). The phrase, "For the fiscal year," etc. was retained, and an optional privilege was given to pay graduated rates on the gross earnings, in principle like the law of 1882 and 1884, in lieu of the regular tax assessed on the appraisal, with the further provision,—which was first contained in the Act of 1904,—in effect limiting the right of option to its exercise for the entire year.

It is well settled that where the language of a statute is ambiguous and susceptible of two reasonable interpretations weight is given to the doctrine of contemporaneous practical construction. *In re National Guard,* 71 Vt. 493; *State* v. *Stimpson,* 78 Vt. 124; *Houghton* v. *Payne,* 194 U. S. 88, 48 L. ed. 888; *Whittemore* v. *People,* 227 Ill. 453, 10 Am. & Eng. Ann. Cas. 44. Under this doctrine the practical construction given to the law of 1882 and 1884 by the administrative officers whose duty it was to carry it into execution, for the length of time before stated, would be entitled to great respect and perhaps would be controlling in the interpretation of the statute here under consideration, did not the latter, viewed in the light of legislative history and the practical construction given to the earlier law, contain indicia of an intention by the Legislature to give it a different meaning. As before observed, the law of 1882 and 1884 was without terms expressly characterizing the tax assessed thereby as either annual or semi-annual as distinguished from the other, and the language in this respect may well be said to have been of doubtful import. It is presumed that the Legislature was informed of this law and of the practical con-

33

struction it had received, giving the tax a semi-annual character, when the subsequent acts were passed.     Suth. Stat. Constr., 2nd ed., secs. 403, 499.     In the light of this information it enacted the law of 1890, expressly providing that payment of an arbitrary percentage on the gross earnings might ''annually'' be made in lieu of the tax on the appraisal; and the same language was used in the Act of 1902.     In the amendment of 1904, the language was changed from the word ''annually'' to ''For the fiscal year beginning,'' etc., words equally or more definite, with a further provision declaring that no right to exercise such option in the second half of the year should exist except that it had been exercised in the first.     Thus by the two provisions an intention is indicated to make the optional tax an annual one rather than semi-annual.     The same provisions were carried forward into the law of 1906 which changed the previously existing optional right, ''for the fiscal year beginning,'' etc. to pay an arbitrary rate per cent on the gross earnings, to the same right ''for the fiscal year beginning,'' etc., to pay graduated rates on the gross earnings in lieu of the regular tax on the appraisal, also for the fiscal year.     In view of the law of 1882 and 1884 and its known practical construction, the insertion of the two above named provisions in the subsequent acts as before noticed, can reasonably be accounted for only as an intention by the lawmakers to make the tax an annual one instead of semi-annual, as by the earlier law under the construction given.     To hold that such was not the effect would be to render the words so inserted without force, a holding not in harmony with the elementary rule of construction that effect must be given, if possible, to every word, clause, and sentence of a statute.     And the tax being for the fiscal year, to make the provision therefor effectual, the rate, by implication, is to be determined by the gross earnings during the same period.     The phrase ''in the manner and at the times specified in the third following section'' (P. S. 717), does not indicate otherwise; for that section provides only for returns of the gross earnings on which to base the semi-annual payments, and specifies the times within which such payments shall be made.

We hold therefore that the rate is to be determined upon the gross earnings during the fiscal year for which the tax is to be paid.

It is said, however, that as a practical fact the gross earnings of a railroad are not uniformly the same between the two six months periods of the year, consequently under the above construction there might be an excess over the true amount by law to be paid at the end of the first semi-annual period; that it is hardly probable that the Legislature has passed a law taking more of the taxpayer's money than it ought, for the sake of returning it at the end of the year; and that on the other hand, if the rate is determined by the gross receipts for each six months' period, there can be no such thing as an over-payment during the fiscal year. It is true that if the rate is determined by the gross earnings for semi-annual periods, the exact amount required by law to be paid can always be ascertained, while under the construction given there may be an over-payment at the end of the first half of the year, or the amount paid may be too small. Yet the force of this argument is in support of the construction here given, since by making provision for the refunding of any excess paid (P. S. 695), and for an additional tax in case the commissioner finds that owing to the incorrectness of a return, or any other cause, a tax paid is too small (P. S. 694), manifestly the Legislature contemplated that there might be such a condition of things as to make the law of these sections applicable.

The facts of record show that the defendant in each case duly and seasonably elected to accept the provisions of section 714, and that the Rutland Railroad Company paid to the State the amount of the tax computed with the rate determined by the gross earnings of the respective semi-annual periods on which the several payments were based, instead of the amount computed with the rate determined by the gross earnings for the full fiscal year, as required by the statute under the construction here given; that the Central Vermont Railway Company computed the tax with the rates determined in the same way, and paid to the State the major part, but not the full amount, of the tax so computed.

The State contends that since in each case the payments made were based upon an erroneous method of computation, the defendants have not legally availed themselves of the option, and that consequently they are liable for taxes on the appraisal of their property and corporate franchises under section 713. In support of this position it is argued that section 714 creates

no legal liability on the defendant's part to pay the sum therein provided for in lieu of the tax on the appraisal; that a payment thereof is purely voluntary; and that no method is provided whereby the State may enforce it. But the fact that payment upon the gross earnings was optional did not in itself make the payments so made voluntary. The defendants were by statute obliged to pay a tax, and it would be on the appraisal unless they accepted the option given them also by statute to pay on the gross earnings. The payment of the percentage specified was none the less mandatory under the optional provision when accepted than was the tax on the appraisal had the option not been exercised. In either form, money paid is a tax.

In principle the effect of this optional right is not unlike that under consideration in *Baker* v. *Sherman*, 77 Vt. 167. There in a former suit between the same parties upon the same cause of action, the defendants after verdict moved in arrest of judgment, which motion was finally sustained in this Court, and the declaration held bad. The Court granted leave to amend and a new trial on terms imposed, and ordered that if a new trial was not wanted on the terms imposed judgment should be arrested. The case being remanded to the county court, the plaintiffs elected to submit to an arrest of judgment rather than to amend the writ and proceed to a new trial on the terms imposed. A new suit was then brought for the same cause of action, and by the plea of the statute of limitations and pleadings subsequent thereto, the question whether the plaintiffs voluntarily abandoned the former suit was put in issue. The defendants contended that the election between the two courses made the election to submit to an arrest of judgment a voluntary abandonment of the suit. In holding to the contrary, the Court said: "But it is to be observed that this was not a case in which the plaintiffs could do either or neither of two things. They sought to hold the verdict which they had obtained but were compelled to abandon it and to take one of two courses, both of which were against their will. Under such circumstances the taking of one course rather than the other does not make the course taken voluntary in any proper sense. * * * In submitting to an arrest of judgment when in a dilemma not of their own seeking but forced upon them, the plaintiffs were acting under judicial compulsion."

Section 694 of the statute, to which reference has already been made, provides ample remedy by requiring the commissioner, ·in case he finds that owing to the incorrectness of a return, or any other cause, a tax paid is too small, to assess an additional tax sufficient to cover the deficit, and if the additional assessment is not paid within the time therein specified, the person or corporation against whom it is assessed becomes liable to the same penalties as for neglect to pay annual or semi-annual taxes.

It follows that on the agreed cases the State is not entitled to recover in either suit.

*In each case judgment reversed and judgment for the defendant without costs.*