IN RE FRANK A. TURNER.

Special Term at Rutland, November, 1917..

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed January 4, 1918.

*Habeas Corpus—Judgment not a Bar to Subsequent Proceedings
—Jurisdiction Challenged by Writ—Statutes—Construction
—Repeal of former Enactments—Judicial Notice—History
of Legislative Enactment—Question Raised Under Writ of
Habeas Corpus—Sufficiency of Complaint.*

A judgment on *habeas corpus* remanding the prisoner is not, as matter
of law, a bar to subsequent proceedings of the same kind founded
on the same facts, but the courts and justices or judges having
jurisdiction have power to prevent an abuse of the writ.

The writ of *habeas corpus* challenges the jurisdiction alone, and the
inquiry is not confined to the jurisdiction over the subject matter
and the person, but extends to the jurisdiction to render the par-
ticular judgment.

A statute will not be construed as repealing a former act on the same
subject, in the absence of express words to that effect, unless there
is such an inconsistency between them that they cannot stand
together, or unless the latter act is evidently intended to supersede
the former in respect to the matter in hand and to comprise in it-
self the sole and complete system of legislation on that subject.

Judicial notice is taken that No. 101, Acts 1915, was prepared and rec-
ommended by the National Conference of Commissioners on Uni-
form State Laws and that, at the time of its adoption by the Ver-
mont Legislature, it had already been adopted by several of the
other states.

P. S. 5726 was repealed by No. 101, Acts 1915.

The question raised under a writ of *habeas corpus*, issued on a com-
plaint that the relator is unlawfully imprisoned after conviction of
a crime, is not whether the complaint on which he was convicted
is sufficient as a matter of pleading, but whether it is void in that
it describes no offence of which the court has jurisdiction.

PETITION for writ of *habeas corpus* brought to the Supreme

Court for Rutland County, and heard on an agreed statement of facts, and motion to dismiss. The opinion states the case.

*Lindley S. Squires* for the relator.

The former proceedings in county court, wherein relator's petition for a writ of *habeas corpus* was dismissed do not constitute a bar to this proceeding. *Re Barker,* 56 Vt. 1; *Re Misk-. mins,* 49 L. R. A. 831; *Re Clark,* 15 L. R. A. 389; *Re Justus,* 25 L. R. A. (N. S.) 483.

*C. V. Poulin,* State's Attorney, for the State.

TAYLOR, J.   The relator pleaded guilty September 27, 1916, in the Rutland city court to a complaint charging that he, being of sufficient pecuniary ability, at the time and place named, neglected and refused to provide necessary food and maintenance for his wife, Louise Turner, and four minor children, contrary to the form of the statute, etc.   Thereupon the court sentenced him to be confined at hard labor in the House of Correction for a term of not less than eighteen months nor more than two years from the date of commitment.   The same day he was committed to said place of imprisonment where he is still held in execution. He has been brought before this Court on a writ of *habeas corpus* issued on a complaint alleging that he is unlawfully imprisoned and praying that he may be relieved therefrom.   The specific cause alleged why he should be discharged is that the complaint on which he was convicted and sentenced was brought under P. S. 5726, which provides a penalty of not more than six months imprisonment or a fine of not more than twenty dollars, or both; and that therefore his confinement after March 27, 1917, is unlawful.

The State's attorney challenges the relator's right to a hearing on the merits of the complaint on the ground that the proceedings are barred by a decision of the Rutland county court adverse to the relator from which no exception was taken.   It is conceded that the relator was before said court at its September term, 1917, on a writ of *habeas corpus* issued on an application addressed to said court; that he then sought a discharge from his imprisonment upon two grounds, one of which is the same as that upon which the present complaint is based; that upon hearing the

county court adjudged that he was not illegally imprisoned and dismissed his complaint; and that from this judgment no exception was taken.

The question whether a decision adverse to the relator in *habeas corpus* proceedings is *res judicata* and so bars a subsequent application for the same cause is now for the first time before this Court for decision. The question has frequently arisen in other jurisdictions and an examination of the reported cases discloses a marked want of uniformity, both in reasoning and result. Some courts make a distinction between cases in which the imprisonment or restraint grows out of a civil action and those where the question is between the individual seeking his liberty and the people, or the state, seeking his restraint. In the latter class of cases the prevailing rule is that an order in one proceeding does not bar another or further proceeding for the same cause. 1 Bailey on *Hab. Cor.* 206; see *Cormack* v. *Marshall*, 211 Ill. 519, 71 N. E. 1077, 67 L. R. A. 787, 1 Ann. Cas. 256. The diversity of decisions is apparently affected to some extent by local statutes.

The Constitution of this State makes the writ of *habeas corpus* a writ issuable of right. Con. Ch. 2, Sec. 33. We have no statute regulating successive applications for the writ. The beneficent purpose of the writ is to provide a summary proceeding to determine the lawfulness of one's imprisonment or restraint. Except when imprisoned for contempt, when the writ must be returnable to the Supreme Court (P. S. 1965), application for relief may be made to the Supreme Court during its sittings, or to any Justice thereof during vacation, or to any superior judge, or to the county court in the county where the applicant is imprisoned, if in session. P. S. 1939. The court or other authority to whom the complaint is made, is required to award the writ and without delay examine the causes of imprisonment or restraint. P. S. 1942, 1954. Each is given full power to make final disposition of the application. P. S. 1958, 1960. No provision is made for review of questions of law arising in such proceedings. The general provisions of the statute relating to exceptions do not extend to the orders of a Justice of the Supreme Court, or those of a superior judge, in matters of this kind. When the application is made to the county court the relator may have its judgment reviewed on exceptions. *In re Cooper,* 32 Vt. 253. But that right is merely incidental and does not flow from

any special jurisdiction conferred on the county court in such cases.

At common law the rule is that a final judgment remanding the prisoner in proceedings on *habeas corpus* does not bar a subsequent application for another writ. *Ex parte Partington,* 13 M. & W. 679. We do not think that the rule is affected when the application chances to be to the county court. Manifestly an order by a Justice of this Court in vacation, or by a superior judge, would not bar a subsequent application to this Court for review. But their jurisdiction in such proceedings is concurrent with that of the county court; and if their orders are not *res judicata,* how can it be said that those of the county court in such matters are? Considering the nature and purpose of the proceeding, which out of regard for the liberty of the citizen brooks no unnecessary delay, and as well the absence of a provision securing a review in all cases by exceptions, it must be held that a judgment on *habeas corpus* remanding the prisoner is not, as matter of law, a bar to subsequent proceedings of the same kind founded on the same facts. See *Bradley* v. *Beetle,* 153 Mass. 154, 26 N. E. 429.

*In re Barker,* 56 Vt. 1, supports this conclusion. That was a *habeas corpus* proceeding brought to the county court which discharged the relator. The officer having him in custody excepted and the case was heard in this Court on relator's motion to dismiss the exceptions. In course of an opinion holding that when a prisoner is discharged on *habeas corpus* the officer having the custody is not entitled to exceptions, it was said, quoting Baron Parke in *Ex parte Partington, supra,* that the relator "may renew his application to every court in the kingdom having jurisdiction, until he obtains his liberty." It is not necessary to the decision of this case to determine the full extent of the right, but it may not be out of place to suggest that it very likely has its limitations, and that the quotation from Baron Parke removed from its context, may not be an entirely accurate statement of the law.

It was intimated in *Bradley* v. *Beetle, supra,* that it was a matter of discretion in the court or justice to hear and determine a new application when it appeared that the same state of facts continued to exist as at a former hearing; and it was held in *Ex parte Moebus,* 74 N. H. 213, 66 Atl. 641, that the same questions could not be again litigated *as a matter of right.* In some

of the cases a distinction is made between repeated applications
to courts or judges of inferior jurisdiction and where the subse-
quent application is to a court of review, the latter being sus-
tained and the former denied. It is enough for the present to
say that the courts and justices, or judges, having jurisdiction in
matters of *habeas corpus* are not powerless to prevent an abuse
of the writ by successive applications on the same state of facts.

It is further urged that proceedings by writ of *habeas corpus*
challenge alone the jurisdiction of the court and do not reach
the charges and proceedings anterior to the judgment. It is the
general rule that the judgment of a court of competent jurisdic-
tion, although erroneous, is binding until reversed; and it is well
settled that the writ of *habeas corpus* cannot be given the effect
of a writ for the correction of errors or irregularities. *In re
Filton,* 68 Vt. 297, 300,, 35 Atl. 319. It was said in this case
that one who is detained upon a sentence following conviction
will not ordinarily be entitled to relief, unless the defect is such
as to render the proceedings void; but that if the court has juris-
diction of the subject matter and the person and renders such a
judgment as it would be authorized to render in some circum-
stances in cases of that class, the proceedings will stand the test
of this writ however irregular they may have been. It is com-
monly said that another court cannot by means of the writ of
*habeas corpus* look beyond the judgment and re-examine the
charges and proceedings on which the judgment was based. 24
Cyc. 294. Rightly understood it is well enough to say that the
writ challenges the jurisdiction alone. But the inquiry is not
confined to the jurisdiction over the subject matter and the per-
son. It extends to the jurisdiction to render the particular judg-
ment. *In re Harris,* 68 Vt. 243, 35 Atl. 55.

No question is made but that the court had jurisdiction of
the subject matter and of the person and there is left for con-
sideration the sole question whether it had jurisdiction to impose
such a sentence ''in some circumstances.'' If, as the relator
contends, the subject matter was a complaint under P. S. 5726,
the court plainly exceeded its jurisdiction. It could in no cir-
cumstances impose the sentence it did under that statute, and the
relator would now be entitled to his discharge. But if, as the
State contends, the subject matter was a complaint under No. 101,
Acts of 1915, the court clearly acted within its jurisdiction in
imposing sentence. The controlling question then is: Which

statute did the complaint contemplate? Both the State's attorney and relator's counsel treat P. S. 5726 as having been in force at the time in question, but we cannot agree that such was the fact without investigation. It was in force unless repealed by No. 101, Acts of 1915, and, as the latter act contains no express provision for its repeal, unless repealed by implication.

The rule is well established in this State that a statute will not be construed as repealing a former act on the same subject, in the absence of express words to that effect, unless there is such an inconsistency between them that they cannot stand together, or unless the later act is evidently intended to supersede the former in respect of the matter in hand, and to comprise in itself the sole and complete system of legislation on that subject. *Central Vt. R. R. Co.* v. *State et al.,* 82 Vt. 145, 149, 72 Atl. 324. Thus there may be a repeal by implication in one of two situations: (1) When the acts are so far repugnant that they cannot stand together. (2) When, though not repugnant, the later act covers the whole subject of the former and plainly shows that it was intended as a substitute therefor. *State* v. *Smith,* 63 Vt. 201, 208, 22 Atl. 604; *Barton Nat. Bk.* v. *Atkins,* 72 Vt. 33, 37, 47 Atl. 176.

The two statutes in question have the same general object. They were designed to compel delinquent husbands to support their dependent wives and minor children. P. S. 5726 was originally enacted under the title, "An act to compel certain persons to maintain their families." No. 35, Acts of 1890. As subsequently amended, the act provided that a person who, being of sufficient ability, neglects or refuses to provide necessary food and maintenance for his wife or minor children shall be imprisoned not more than six months or fined not more than twenty dollars, or both. No. 101, Acts of 1915 is entitled, "An act relating to desertion and non-support of wife or child and providing punishment therefor and to promote uniformity between the states in reference thereto." It contains eight sections. Section 1 provides that a husband who shall, without just cause, desert or wilfully neglect or refuse to provide for the support and maintenance of his wife in destitute circumstances, or any parent who shall, without lawful excuse, desert or wilfully neglect or refuse to provide for the support and maintenance of his child under the age of sixteen years, in destitute circumstances, shall be imprisoned at hard labor not more than two years or fined

not more than three hundred dollars, or both.    Sections 2 and 6
relate to procedure.    Sections 3 to 5 inclusive provide ways by
which the necessities of the wife and children can be relieved
under the court's orders.    Section 7 makes it the duty of the
officer in charge of the institution where the husband is confined
under sentence, to pay over a stated sum monthly for the support
of the wife or child.    Section 8 provides that the act shall be so
interpreted ''as to effect its general purpose to make uniform
the law of those states which enact it.''

Comparison of the statutes discloses no such inconsistency
as forbids their standing together.    It remains to consider'
whether the later act so covers the subject of the former as clearly
to indicate that it was intended that the later should supersede
the former.    We are satisfied that this is the necessary inference.
Section 1 of the act covers the whole subject embraced in P. S.
5726 except that the former includes only minor children under
the age of sixteen, while the latter extends to all minor children.
But this fact is not sufficient to throw serious doubt on the ques-
tion.    The increased penalty and the additional provisions bet-
ter calculated to accomplish the purpose expressed in the title
of the original act indicate clearly enough that the later act was
intended as a substitute.    See note 88 Am. St. Rep. 278.    But
the strongest indication of this intention is found in the title
and the last section of the act, which bear evidence of the fact
that an important object sought to be accomplished was uni-
formity of statutes on the subject throughout the states of the
Union.    We may take judicial notice that the Act of 1915 was
one prepared and recommended by the National Conference of
Commissioners on Uniform State Laws and that at the time of
its adoption by the Legislature of this State it had already been
adopted by several of the other states.    *State* v. *Rutland R. R.
Co.,* 81 Vt. 508, 511, 71 Atl. 197.    It would do violence to the
expressed intention of the Legislature to promote uniformity of
law on the subject, to presume that they intended to defeat that
purpose by retaining a statute which would create dissimilarity.

We hold that No. 101, Acts of 1915, repealed P. S. 5726 and
was the only statute on the subject in force at the times to which
the inquiry relates.

We are not unmindful of the fact that both statutes appear
in the revision of 1917.    It is urged that this indicates the
legislative intention to continue P. S. 5726 in force.    It is not

now necessary to consider what the status of what was formerly P. S. 5726 will be after February 1, 1918, the date when the General Laws take effect. Whatever the intention of the Legislature of 1917 was in bringing P. S. 5726 forward into the General Laws, it would not relate back to affect the evident intention with which No. 101, Acts of 1915, was originally enacted.

The relator insists that the complaint on which he was convicted is wholly insufficient to charge an offence under No. 101, Acts of 1915. However, the question is not as to the sufficiency of the complaint as a matter of pleading, but whether it is void in that it describes no offence. The inquiry in such case is not whether the complaint contains such specific allegations as would make it good on demurrer or motion in arrest, but whether it describes a class of offences of which the court has jurisdiction and alleges the respondent to be guilty. *In re Coy*, 127 U. S. 731, 32 L. ed. 274, 8 Sup. Ct. 1263. If there is a manifest want of criminality in the matter charged, such as in effect to render the proceedings void, doubtless relief could be granted on the writ of *habeas corpus*. Note, 26 Am. Dec. 48. But where the complaint, though inartificially drawn, shows an evident attempt to state the essential facts which constitute the crime sought to be charged, a defect in statement will not warrant a discharge. To hold otherwise would be to substitute the writ for the regular proceedings in error and would result in intolerable interference with the ordinary process of criminal prosecutions. 12 R. C. L. 1202. The complaint satisfies the requirements of a charge under the statute sufficiently to withstand the attack of this writ.

*It is adjudged that the relator is not unlawfully imprisoned and he is remanded to the House of Correction, whence he was taken, and his complaint is dismissed.*