F. A. MAGWIRE *v.* VILLAGE OF SPRINGFIELD.

November Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 7, 1941.

*Barber & Barber* for the plaintiff.

*Herbert H. Blanchard* and *P. D. Ainsworth* for the defendant.

STURTEVANT, J.  In this action the plaintiff, F. A. Magwire, seeks to recover from the defendant, the incorporatd village of Springfield, the sum of three hundred dollars which he claims to have paid under protest as alleged license fees to enable him to continue the operation of three so-called pinball machines at his store in the defendant village.  The case is here upon the plain-

416

tiff's exceptions to the action of the court in sustaining the defendant's demurrer to his complaint.

The material facts set forth in the declaration and admitted by the demurrer are as follows:

The defendant is a municipal corporation, incorporated by No. 343 of the Acts of 1904. The plaintiff is a resident in said village and owns and operates a business there, namely, Magwire's Pharmacy.

The plaintiff at all times here material permitted to be kept in his said pharmacy three so-called pinball machines which were duly licensed by the commissioner of taxes for the State of Vermont and each machine location was licensed and fees paid, all pursuant to Part II of No. 38 of the Acts of 1937.

On April 9, 1940, at a meeting of the voters of said Springfield an ordinance designated as section 54 of the by-laws of that village was enacted. The parts of this here material are as follows:

> "3rd. No person shall keep, or allow to be operated or played in any place owned or conducted by him which is frequented by the public, a so-called slot or pinball machine or other similar device, as defined by Sec. 3 of Part II of No. 38 of the Acts of 1937, unless such person has been licensed by the Village as hereafter provided, and no license shall be issued for the installation of such machine, apparatus or device in Springfield Village within three hundred feet of a school building by the route most generally traveled by the pupils of such school.
>
> "4th. An annual license fee for such person of Five Hundred Dollars for each such machine so kept in such place shall be paid to the Village by each such person for the right to maintain such machines on the premises.
>
> "5th. Applications for such licenses shall be made to the Trustees of the Village, in writing, signed by the applicant, such writing to contain the name and address of the applicant, a description of the location of such place where the machine or devices are to be kept, a description of the machine to be kept, and the number of such ma-

chines. The amount of money required by this by-law for such license shall be deposited with such application, all at the office of the Village Clerk. Such licenses may be transferred from one such machine, apparatus or device to another having the same owner, provided, however, that notice of such transfer shall be sent to the Village Trustees upon blanks prepared and furnished by them, giving the descriptions of the machine, apparatus or device to which the license is to be transferred and such other information as the Village Trustees may require.

"6th. Upon approval of such application by the Trustees, the Clerk shall issue license thereupon, such license to contain the name and address of the licensee, description and number of machines licensed, location of the premises, and shall be in force until April 30th after the date of application. Any application may be rejected if the Trustees find that its issuance will not conform to the Public good.

"7th. No license shall be issued or remain in force in case the applicant fails to comply with all State and Federal laws affecting this same subject matter.

"8th. This by-law shall take effect on May 1st next.

"9th. Any person violating any of the provisions of this by-law shall be fined not more than one hundred dollars, and upon conviction hereunder shall forfeit his license."

Article 22 of the warning for this meeting was in substance to see if the voters would authorize an annual license fee of one hundred dollars for each pinball machine. At a special village meeting held April 23, 1940, the words "five hundred dollars" in the fourth paragraph of said ordinance as above stated were voted to be changed to "one hundred dollars."

On, to wit, the first day of May, 1940, the plaintiff applied for the licenses required by said ordinance and paid the fees in the total sum of three hundred dollars to the defendant as thereby required. The trustees, prosecuting officers and agents of the defendant threatened to enforce said ordinance and the

penalties thereunder unless the plaintiff paid the license fees as therein required and abided thereby. Said payment and application for licenses were made by the plaintiff under protest and with notice that he should forthwith institute legal proceedings to recover same. The plaintiff accompanied his application and payment with a letter in words and figures as follows:

> "To the Incorporated Village of Springfield
> Springfield
> Vermont
>
> I, F. A. Magwire, of Springfield, understand that unless I procure a license and pay the $100 fee required by Section 54 of the By-laws of the Village of Springfield, as finally adopted by the voters on April 23rd, 1940, that I will subject myself to a criminal prosecution plus endangering any future license under the ordinance.
>
> In order to avoid this situation, I herewith hand you $300 and apply for a license which I am obliged to do because of the erroneous, improper, invalid and unconstitutional pinball ordinance, so-called, being Section 54 of the By-laws of Springfield Village. This is notice to you that this payment and application is under my strenuous protest and that I shall forthwith institute suit to recover same.
>
> Very truly yours,
> F. A. Magwire."

The plaintiff in his declaration also alleged and now contends that the ordinance, section 54 of the by-laws of the village of Springfield, is invalid and void for the following reasons:

1. The ordinance was not enacted pursuant to a sufficient warning for the meeting at which it was voted, nor was it enacted in the manner required by the defendant's charter.

2. The ordinance is not authorized by the defendant's charter and the voters of Springfield were without authority to enact same.

3. The license fee of one hundred dollars per machine required by the attempted ordinance is not a reasonable sum to be exacted for issuing the license and providing such regulation as is required thereby.

Among the grounds of defendant's demurrer to the plaintiff's declaration are the following:

"2. The action was brought to recover Three Hundred Dollars ($300.) in license fees paid voluntarily by the plaintiff to the defendant with a full knowledge of the facts and circumstances, as set forth in the declaration.

"3. The plaintiff's declaration states that he understands that unless he procures a license and pays a fee that he will subject himself to a criminal prosecution and that in order to avoid this situation, he pays the fee, and the declaration nowhere alleges that the plaintiff was threatened with criminal prosecution by anyone having authority to bring such criminal prosecution.

"4. Payment of a license fee under protest under the circumstances alleged in the declaration does not make the payment an involuntary one."

The questions raised by the plaintiff's exceptions may be summarized as follows:

1. Is the ordinance here in question legal and valid?

2. Assuming that the ordinance is void, was the payment of the fees here in question made by the plaintiff voluntarily in the sense that he is thereby barred from maintaining this action?

We take up these questions in the order stated.

The ordinance here in question is claimed to have been enacted by authority conferred upon the defendant by section 2 of No. 269 of the Acts of 1919, which is as follows:

"The village of Springfield may make regulations relating to the suppression and restraint of disorderly and gaming houses, bowling alleys, billiard and pool tables, and all descriptions of gaming, and relating to the destruction of all instruments and devices used for that purpose and relating to the location of bowling alleys."

While the record does not show what a so-called pinball machine is there is no question here made but that these machines are gaming devices which come within the provisions of Section

3, Part II of No. 38 of the Acts of 1937. The parts of this act here material, all to be found in part II, may be summarized as follows:

Sec. 3. A person shall not keep in premises controlled by him a machine into which may be inserted a piece of money or other object for which money is paid and which a person may operate by the application of physical or mechanical force as a game or contest by attempting to make a score or reach a standard, when the score or standard attained is the result in a substantial measure of skill, unless such person has been licensed except as hereinafter provided.

Sec. 4. A person shall not keep on premises occupied by him or under his management or control such a machine as described in section 3 unless such machine has been licensed for use in this State as hereinafter provided.

Sec. 5. The location of each such machine must also be licensed as hereinafter provided. Each license shall be issued upon the understanding that children under the age of sixteen years shall not be allowed to play such machine.

Sec. 6. An annual license tax of two hundred dollars shall be paid by each person required to be licensed under the provisions of section 3, twenty-five dollars for each machine and five dollars for each machine location.

Sec. 7. Licenses required by this act shall be issued by the commissioner of taxes and the information to be contained therein, the form, etc., shall be as required by him.

Sec. 8. This section deals with the manner of making application for such licenses and specifies certain matters to be contained therein and provides that "upon receipt of an application in proper form and payment of the fees, the commissioner of taxes shall issue the license applied for, unless he finds upon investigation and hearing, after due notice to the applicant that the issuing of such license will not conduce to the public good."

Sec. 9. The time when any such license shall expire is December 31 of the year in which it is issued.

Sec. 10. "The commissioner of taxes shall make such rules and regulations as he deems necessary for the proper administration and collection of the license taxes imposed herein."

Secs. 12 and 13 set out conditions under which premises may be searched for machines not licensed as required by this act and in case any such machine is found, procedure as to hearing and disposition of same is outlined.

Sec. 14. ''The commissioner may for cause suspend, or after hearing and for cause revoke any license issued under the provisions of this act.''

Sec. 15. ''A person * * * who violates a provision of this act shall be fined not more than five hundred dollars or imprisoned not more than six months, or both.''

Sec. 17. All moneys collected under the provisions of this act shall be forthwith paid into the state treasury.

The plaintiff, in his brief, places his claim that the ordinance in question is void upon three grounds, namely:

a. The defendant had no authority to enact ordinances regulating pinball machines.

b. The State having granted the right to carry on business with these machines at the location in question until December 31, 1940, the defendant could not interfere with this vested right.

c. The fee or tax of one hundred dollars per machine is unreasonable.

The defendant contends it was authorized to enact the ordinance in question by authority of the provisions of No. 269 of the Acts of 1919, namely, ''the village of Springfield may make regulations relating to the suppression and restraint of * * * gaming houses, * * * and all descriptions of gaming and relating to the destruction of all instruments and devices used for that purpose and relating to the location of bowling alleys.''

The plaintiff insists that insofar as here material, the last above quoted statute was repealed by the Legislature enacting part II of No. 38 of the Acts of 1937 as hereinbefore mentioned. As to the authority of the Legislature to do this, see *Montpelier* v. *East Montpelier*, 29 Vt. 12, 18, 19, 67 Am. Dec. 748; *Sargent* v. *Clark*, 83 Vt. 523, 525, 77 Atl. 337; *Meriwether* v. *Garrett*, 102 U. S. 472, 26 L. Ed. 197, 204. The rule is well established in this State that a statute will not be construed as repealing a former act on the same subject in the absence of express words to that effect, unless there is such inconsistency be-

tween them that they can not stand together or unless the later act is evidently intended to supersede the former in respect of the matter in hand, and to comprise in itself the sole and complete system of legislation on that subject. *O'Rourke* v. *Cleary et al.*, 104 Vt. 312, 318, 158 Atl. 673; *Town of Hartland* v. *Damon's Estate*, 103 Vt. 519, 528, 156 Atl. 518; *In re Turner*, 92 Vt. 210, 215, 102 Atl. 943. Thus there may be a repeal by implication: 1. When the acts are so far repugnant that they can not stand together. 2. When, though not repugnant, the later act covers the whole subject of the former and plainly shows that it was enacted as a substitute therefor. *In re Turner, supra*, at 215, and cases there cited to this proposition.

A comparison of the two statutes, No. 269 of the Acts of 1919 and part II of No. 38 of the Acts of 1937, shows that by authority of the former, the defendant was authorized not only to enact ordinances relating to the restraint of all descriptions of gaming and relating to the destruction of all instruments and devices used for that purpose but could also make regulations relating to the suppression of same. Clearly this statute is broad enough to and does include the machines here in question.

Authority to make regulations relating to the restraint of an action or business as conferred by the former statute has been held to give the power to license. It is not synonymous with suppression but contemplates the continued existence of the business, placing it within bounds, in effect, licensing it. *In re Snell*, 58 Vt. 207, 209, 1 Atl. 566, and cases there cited.

If the ordinance in question was authorized by No. 269 of the Acts of 1919 and is therefore valid, when a person wishes to operate a pinball machine within the limits of the village of Springfield the question of public good must be passed upon by two separate and distinct administrative agencies, namely, the commissioner of taxes and the trustees of the defendant village. Sec. 8, Part II, No. 38, Acts of 1937 and No. 6 of Sec. 54 of the by-laws of the village of Springfield.

State licenses expire December 31 of the year in which same are issued, and the Springfield village licenses expire on the 30th day of April next after issuance. The application of part II of No. 38 of the Acts of 1937 is State wide. Under the provisions of the seventh paragraph of the ordinance hereinbefore quoted the applicant is not entitled to receive a license

from Springfield Village unless he has complied with all State and Federal laws affecting the subject matter. That is, the applicant must pay for and receive a State license before he can know what will be the decision of the trustees of the defendant village on the question of public good as to his application for a village license. If the latter's decision is unfavorable to him, his State license is worthless, even though the commissioner of taxes has previously decided this same question in his favor. As to machines of the kind here in question the powers conferred upon the commissioner of taxes by part II of No. 38 of the Acts of 1937 are substantially the same as those which the defendant claims were conferred upon it by No. 269 of the Acts of 1919 and which act the defendant contends continued in force after the Legislature enacted the later statute and so authorized the enactment of the said ordinance. If this is true, the State acting through the commissioner of taxes can license the operation of pinball machines in Springfield and the defendant can suppress same or render such license worthless and of no effect. It can hardly be supposed that the Legislature intended such a result. Concerning the question we are considering the provisions of the later statute derogate from and are inconsistent with the former one. It follows that the Legislature by the enactment of the later statute must have intended to repeal the former one insofar as it conferred upon the defendant the authority to license or to refuse to license so-called pinball machines within the limits of the defendant village.

■ Therefore, the ordinance in question insofar as same relates to licensing pinball machines by defendant was enacted without authority and is void. *In re Snell,* 58 Vt. 207, 209, 210, 1 Atl. 566; *St. Johnsbury* v. *Thompson,* 59 Vt. 300, 305, 9 Atl. 571, 59 Am. Rep. 731. Also see *In re Turner,* 92 Vt. 210, 215, 216, 102 Atl. 943; *State* v. *Angelo,* 71 N. H. 224, 51 Atl. 905; *Boyer* v. *Delaware Liquor Commission,* 6 W. W. Harr., Del., 224, 173 Atl. 522, 526; *Mulcahy* v. *Mayor of Newark,* 57 N. J. Law 513, 31 Atl. 226; *Haynes* v. *City of Cape May,* 52 N. J. Law 180, 19 Atl. 176.

■ The defendant points out that in some instances a person may be required to pay a license fee to the State and another to the county or city in order to engage in a certain business. However, when as in the case before us the different laws requir-

ing the payment of such separate license fees are so inconsistent that they can not stand together, it is axiomatic that both can not be in force at the same time. The result here reached makes it unnecessary to consider other questions raised by the plaintiff on this issue.

It remains to consider whether the plaintiff's payment of the fees here in question was voluntary.

It appears that when he applied to the defendant for these licenses the trustees, prosecuting officers and agents of the defendant village were threatening to enforce against him the penalties provided for in the ordinance unless he paid the license fees according to the terms thereof and abided thereby. He paid these fees to avoid being prosecuted and to enable himself to continue the operation of these machines for which he held licenses from the State. He strenuously insisted that the ordinance was void and that the defendant was without right or authority to collect the money from him and when he paid these fees he gave notice to the defendant that he would immediately bring a suit to recover the money so paid. Clearly this was not such a voluntary payment as to preclude the plaintiff from maintaining this action. *Henry* v. *Town of Chester*, 15 Vt. 460, 470; *Babcock* v. *Town of Granville*, 44 Vt. 325, 331; *National Metal Edge Box Company* v. *Town of Readsboro*, 94 Vt. 405, 410, 111 Atl. 386; 64 A. L. R. page 42, note h.

We hold that the demurrer should have been overruled. The defendant in its brief has asked that in the event the action of the court below in sustaining the demurrer is reversed, the cause may be remanded to permit it to file further pleadings and the case will be disposed of accordingly.

*Judgment sustaining the demurrer reversed and cause remanded.*