CITY OF OWENSBORO et al., Appellants,

v.

J. G. SMITH et al., Appellees.

Court of Appeals of Kentucky.

April 17, 1964.

As Modified on Denial of Rehearing
Dec. 4, 1964.

William T. Carroll, City Atty., Owensboro, for appellant.

Thomas F. Marshall, Funk, Chancellor & Marshall, Frankfort, for appellee.

STEWART, Judge.

This is an appeal from a judgment of the Daviess Circuit Court, holding that City of Owensboro Ordinance No. 24–61 which prohibits the licensing by the city of any pinball, shooting, target or amusement device for which a federal gaming stamp has been secured, is ultra vires because it is outside or in excess of the authority conferred by KRS 137.410, and invalid because it is in conflict with Kentucky statutes relating to the licensing of coin-operated amusement machines.

The judgment enjoined appellants, who are the Mayor, Board of Commissioners, City Manager, City Treasurer, and Chief of Police of the City of Owensboro, from enforcing the ordinance and directed appellants to issue the city license applied for on the pinball machine herein involved.

Two of appellees are J. G. Smith and Marvin Melheiser, a partnership doing business under the name of the Owensboro Amusement Company. They own pinball machine No. B–3659 and, pursuant to KRS 137.340, paid the state fee required and were issued a license in accordance with KRS 137.360 for the machine. They anticipated placing the device in a restaurant in Owensboro owned by Robert Wellman, also an appellee. Wellman, under protest, bought a federal gaming stamp for the machine, and Smith and Melheiser applied for a city license for it under the provisions of City of Owensboro Ordinance 11–27, the general

licensing ordinance, and tendered the fee of $10 named therein. The city clerk declined to grant the license, as the application stated a federal gaming stamp for it had been secured. This refusal was based on City of Owensboro Ordinance 24–61 mentioned above. Following this refusal, the three appellees brought this action, asking for the relief which was granted in the judgment.

The trial judge found the pinball machine is activated by the insertion of a 5¢ coin, and "in its construction, operation and use meets the qualifications of * * * KRS 436.230(5), which exempts devices similar in all respects to the one owned and operated by the Owensboro Amusement Company from the penalties provided in a previous subsection of the same statute making it unlawful to set up and keep, manage or operate, certain machines or contrivances for the purpose of gambling. No money, or any thing else of value, may be won or lost in the operation and playing of this device, and the operation and playing of such device shall not be considered gambling under the provisions of KRS 436.230(5)."

The trial court concluded as a matter of law that the Commonwealth had preempted the field of licensing coin-operated amusement machines in this state by enacting KRS 137.340 through KRS 137.410; and that City of Owensboro Ordinance No. 24–61 was ultra vires and therefore invalid, as its enactment was beyond the power conferred upon the city by KRS 137.410.

It is argued that where a state licenses pinball games under statutory provisions intended to be state-wide in effect, as in the case of KRS 137.340 through KRS 137.410, such games are exclusively governed by state law and the City of Owensboro had no authority to enact the prohibitive ordinance. It was restricted, it is contended, to the power granted by KRS 137.410, which provides only for the charge of a limited license tax, and the attempt to set up additional requirements for the obtaining of a city license on pinball games is void.

To support their position appellees cite Magwire v. Village of Springfield, 111 Vt. 414, 17 A.2d 260, where it was held that the legislature, by the enactment of a statute intended to be general in scope for the licensing of pinball games, must have intended to repeal a former statute empowering a municipality to license or refuse to license pinball machines within the limits of the municipality. They also rely upon Smith Amusement Co., et al. v. Mayor, etc., of the City of Chattanooga, 205 Tenn. 712, 330 S.W.2d 320, wherein it was ruled that an ordinance of the City of Chattanooga prohibiting the possession or display of pinball machines was ultra vires, in view of a state statute specifically excluding pinball machines from the definition of gambling or from classification as gambling devices.

Appellants maintain that the ordinance, the purpose of which is to prevent gaming by the use of pinball machines, does not go counter to the provisions of KRS 436.230(5), the intent of which is also to restrain gaming with such devices. Appellants point out that, by purchasing the federal gaming stamp, appellees have in effect admitted the machine will be used for gambling purposes and that to issue them a city license would actually contravene the intent of the statute.

In Terry v. City of Portland et al., 204 Or. 478, 269 P.2d 544, it was held by the Supreme Court of Oregon that a statute imposing a privilege tax of $50 per annum on every coin-in-the-slot device, enacted in the exercise of the state's power to tax, did not prevent the City of Portland from adopting an ordinance prohibiting the ownership, operation and use of any coin-in-the-slot device, which was aimed not only at devices of a gambling nature but also at machines that did not provide pay-off or free play, notwithstanding that the ordinance, if enforced, would diminish the state's revenue.

In Grigsby v. Mitchum, 191 Kan. 293, 380 P.2d 363, the Supreme Court of Kansas determined that a city ordinance prohibiting issuance of a pinball license to one who had paid a current $250 federal occupational tax for the privilege of operating a coin-operated amusement or gaming device, and requiring revocation of such license if a federal gaming stamp was issued, was not unreasonable or arbitrary and was within the legislative power of the city.

It should be pointed out that Oregon and Kansas, as well as Kentucky, have enacted legislation making gambling illegal within their boundaries. Also, Oregon and Kansas, like Kentucky, have statutes which have been interpreted to mean that a pinball machine which does not pay off in money or tangible property, but only gives free games, is not a gambling device. We believe the opinions of the Oregon and Kansas courts of last resort are sound and persuasive when considered in connection with the subject under discussion.

A careful reading of KRS 137.340 through KRS 137.410 will convince one the Commonwealth went no further in the enactment of these provisions than to impose "an excise tax for the privilege of engaging in the business of selling entertainment or amusement * * * by means of coin machines" and that this tax should be measured by the number of machines a person shall operate. So far as these statutes are concerned it appears obvious the Commonwealth's sole interest in the machines and their owners is limited to the matter of receiving from each owner an annual fee of $10 for each machine he possesses. See KRS 137.360. No provision of KRS 137.340 through KRS 137.410 purports to remove coin-operated devices from regulation by municipalities.

It is common knowledge that pinball machines may be operated in various ways and, even though they may be fashioned to pay off only in free games for those who make a certain score, they can easily be adapted or converted to gambling purposes. In Grigsby v. Mitchum, cited above, this relevant statement appears: "It is an established principle of law that articles which lend themselves to illegal uses are subject to the police powers of the state and municipalities."

The issue presented for determination, so far as we have been able to ascertain, has never been passed upon by this Court. In Hargett v. Kentucky State Fair Board, et al., 309 Ky. 132, 216 S.W.2d 912, it was stated: "Careful scrutiny is always given to an exception to a general statute, and especially is this true when there is an exception permitting the carrying on of an activity generally declared to be against public policy."

KRS 84.010(1), which enumerates the general powers given to a city of the second class, and Owensboro falls in this class, states that the inhabitants of such a city "may govern themselves in all fiscal, prudential and municipal concerns by ordinances and resolutions not in conflict with the Constitution or statutes of this state or of the United States." KRS 84.190(2) expressly grants to second-class cities the authority to license, tax, regulate or *suppress* " * * * instruments used for public amusements * * *." (Emphasis added.) A pinball machine would certainly be denominated an instrument used for public amusement.

We therefore conclude the City of Owensboro, not only under its inherent police power but also under a specific statute, was fully empowered to enact the challenged ordinance. We find no violations of appellees' rights under either the Kentucky or the Federal Constitutions.

Wherefore, the judgment is reversed with directions that appellees' complaint be dismissed.

PALMORE and WILLIAMS, JJ., dissenting.

PALMORE, Judge (dissenting).

I concur in the opinion of the majority that neither KRS 436.230(5) nor the licensing provisions of KRS Chapter 137 prevent a city, in the reasonable exercise of its police power, from prohibiting the use of machines that are readily adaptable to gambling purposes, without regard to whether they are actually so used. However, I do not believe that the possession of a federal gaming stamp is a valid basis for classification.

26 U.S.C.A. § 4462(a) (1) and (2) divide coin-operated amusement or gaming devices into two defined categories. If the device comes within the definition of subsection (2) [1] the tax is $250. Otherwise it is $10. 26 U.S.C.A. § 4461. The Treasury Department's interpretations of the statutory definitions are set forth in the form of examples or illustrations in its detailed regulations. See Federal Tax Regulations, § 45.4462–1. It is quite possible that a real question will exist as to whether a particular machine does or does not fall within the definition of subsection (2), and in that event the owner may reasonably decide to pay the $250 tax instead of taking the risk of violating the law. A taxpayer stands to lose big in an unsuccessful showdown with the Internal Revenue Service.

In this case the complaint says there was a difference in opinion between the appellants and the IRS office as to whether the $250 stamp was required for the machine in question, and that the $250 was paid under protest. It may be that the appellants were entirely correct in their position, but in all probability it would have been impracticable for them to litigate it. It is unreasonable to deprive them of the privilege of using the machine on the sheer basis of their having chosen to pay the tax.

Had the ordinance actually set forth a definitive classification along the lines of 26 U.S.C.A. § 4462(a) (2) and prohibited the use of machines falling within that classification, it would not have been objectionable. But in its present form, which makes the IRS or its local agent the effective arbiter, it seems to me that it is arbitrary and in violation of Const. § 2.

In fact, I am inclined to believe that a state or local law prohibiting an otherwise lawful activity solely on the basis of the affected party's having obtained a federal tax stamp covering that activity may very well violate the equal protection and due process clauses of the 14th Amendment of the U. S. Constitution.

WILLIAMS, J., joins in this dissent.

---

1. Which embraces machines that "may" be used for gambling.