RE NATIONAL GUARD OF VERMONT.

No. 5 of the Acts of the Extra Session of 1898, providing that the First Regiment, National Guard of Vermont, volunteering for service in the United States army, should upon its return constitute and be reinstated as such First Regiment, and each member be credited with the time spent by him in the Federal service, amounted to a leave of absence, without discharge, and upon their return the regiment was reinstated by operation of law.

The Governor having treated the enlistment of members of the First Regiment, Vermont National Guard, as an enlistment by the Regiment itself, under the act of Congress providing for enlistment by State organizations, no cogent reason appears why that construction should be held erroneous.

The contemporaneous construction of a statute by the executive officer whose duty it is to execute it, is not to be disregarded nor overturned unless clearly erroneous.

A statute is to be construed with reference to its manifest object, and so as to carry out rather than defeat it, if both constructions are possible.

ST. ALBANS, March 20, 1899.

*To the Judges of the Supreme Court of Vermont:*

Will you consider the chapter in the Vermont Statutes relating to the Militia, together with Act No. 5 of the special session of 1898, and advise me what the duty of the Executive is with reference to reorganizing the National Guard of Vermont?

It is claimed on the one hand that the National Guard no longer exists, and that in view of certain objections on the part of the public, and of the possible unconstitutionality of the Act No. 5 of the extra session of 1898, that the Executive has no authority to move in the premises, and that the organization of the National Guard of Vermont is dead.

It is claimed on the other hand that it is not; that the Act passed at the extra session is constitutional, unequivocal, and has behind it the pledge of the good faith of the State to those men who surrendered their positions in the National Guard, and accepted service as volunteers in the army of the United States; that the State should restore to them the rights and positions they surrendered, and that in any event, irrespective of this, § 4372 of the Vermont Statutes is mandatory on the Executive and that it is his duty to reorganize the Militia at once. Your early attention to this communication is respectfully asked in order that the Executive may be advised how to proceed in dealing with the above question.     Very truly yours,

E. C. SMITH, *Governor.*

*To Edward C. Smith, Governor of the State of Vermont:*

SIR:—In reply to your request of March 20, 1899, for the opinion of the Judges of the Supreme Court relative to the present status of the Militia of the State, and the reorganization of the same, to which this is attached, the following opinion is given:

On the 30th day of April, 1898, a joint resolution of Congress was approved, entitled, "Joint Resolution for the recognition of the independence of the people of Cuba, demanding that the government of Spain relinquish its authority and government in the Island of Cuba, and to withdraw its land and naval forces from Cuba and Cuban waters, and directing the President of the United States to use the land and naval forces of the United States to carry these resolutions into effect," and, on the 22d day of the same month, an Act of Congress was approved, entitled, "An Act to provide for temporarily increasing the military establishment of the United States in time of war and for other purposes," and, on the following day, a proclamation was issued by the President, calling for volunteers to the aggregate number of 125,000 in order to carry into effect the purpose of the above-named resolution, the same to be apportioned, as far as practicable, among the several states and territories and the District of Columbia, according to population, and to serve for two years, unless sooner discharged.

By § 6 of said act, it is provided, among other things, "That when the members of any company, troop, battery, battalion or regiment of the organized militia of any state shall enlist in the volunteer army in a body, as such company, troop, battery, battalion or regiment, the regimental, company, troop, battery and battalion officers in service with the militia organizations thus enlisting may be appointed by the Governors of the states and territories, and shall, when so appointed, be officers of corresponding grades in the same organization when it shall have been

received into the service of the United States as a part of the volunteer army."

On May 2, 1898, by General Orders No. 6, issued by the Governor and Commander-in-chief, the First Regiment of Infantry, Vermont National Guard, preparatory to muster into the service of the United States to fill the quota apportioned to the State of Vermont, was ordered to concentrate on the State grounds near Burlington, during the then present week. Previous to the issuing of these orders, and under General Orders No. 5, each company of the regiment was not only recruited to its maximum peace strength of fifty-one officers and men, but, in addition thereto, volunteers to the number of fifty for each company were conditionally enrolled, their acceptance through complete enlistment being contingent upon the probable future requirement that the strength of the regiment be augmented. In this way the regiment was contingently put upon a war basis in strength, and such it was when concentrated under General Orders No. 6, but whether, in fact, these enrolled volunteers became members of the regiment through complete enlistment, does not appear.

By No. 5, Acts of Extra Session, approved May 6, 1898, it is provided that "The First Regiment National Guard of Vermont, though giving up its name and position for the time by volunteering for service in the United States Army, shall upon its return from said service constitute, and be re-instated as, the First Regiment National Guard of Vermont. Each member thereof shall be credited with all the time spent in the service of the United States, in the issuance of the medal given for honorable service, and when such medal issues it shall be especially designated thereon that the soldier served in the war with Spain."

The regiment of infantry to fill the quota of this State under the President's proclamation, was organized according to instructions from the Secretary of War and in conformity to the Acts of Congress approved April 22, and 26, 1898,

and designated, First Regiment of Infantry, Vermont Volunteers, under General Orders No. 7, issued by the Governor and Commander-in-chief, and, as such, was mustered into the United States service on May 16, 1898, on which day he issued General Orders No. 9, which read, "The First Regiment of Infantry, Vermont National Guard, having been mustered into the United States service May 16, 1898, as the First Regiment of Infantry, Vermont Volunteers, the temporary withdrawal of the regiment from the National Guard organization of the State is announced. The Commander-in-chief decides that men recently belonging to the regiment, who have not entered the service of the United States with its volunteers, are entitled to honorable discharge from the National Guard service," and, subsequently thereto, by General Orders No. 10, all such men who did not thus enter the service of the United States, were discharged as of that date.

While the National Guard, as such, was not called into the United States service, it is apparent by § 6 of the Act of Congress, referred to, that it was the intention of the law-making power, to give such organizations an opportunity to enter and become a part of the volunteer army, by enlisting as a body, and it is equally apparent that the State legislature was cognizant of the provisions of this Act of Congress when it enacted No. 5 of the Acts of the Extra Session whereby it is assumed that the First Regiment National Guard will give up its name and position, for the time, by volunteering for service in the United States army, and provides for its re-instatement to its former name and position as the First Regiment, National Guard of Vermont, on its return from such service.

This, in effect, was the granting of a leave of absence to the regiment, and to each member thereof who should enter the United States service, during the term of such service, with a permit to enter the same without expressly or impliedly being discharged from the State organization,

and this is the more apparent from the fact that in the same Act there is a provision that, in the issuance of the medals for honorable service in the National Guard, each member shall be credited with the time spent in the service of the United States.

When the President issued his proclamation of April 23d, it was the duty of the Executive of the State so to administer the law that there should be a full compliance with the requisition thus made upon the State, and, in so doing, he was continually called upon to exercise judgment and discretion.   His duties were to be governed by the laws of the United States and the State, and he must exercise his judgment in their interpretation.   When the interests of the State demand it, the Governor may require the opinion of the judges of the supreme court, or a majority of them, upon questions of law, connected with the discharge of his duties—V. S. 1006—which is consistent only with the idea that in the performance of his duties, laws must be construed, judgment and discretion exercised.

As the Executive construed § 6 of the Act of Congress of April 22, 1898, the members of the First Regiment of Infantry, Vermont National Guard, enlisted in the volunteer army in a body, as such regiment, for, by his General Orders No. 9, dated May 16, 1898, he says: "The First Regiment of Infantry, Vermont National Guard, having been mustered into the United States service May 16, 1898, as the First Regiment of Infantry, Vermont Volunteers, the temporary withdrawal of the regiment from the National Guard organization of the State is announced;" and again, in General Orders No. 10, dated July 6, 1898, he inserts, as Article IV., "The First Regiment of Infantry, Vermont National Guard, mustered into the United States service, May 16, 1898, as the First Regiment of Infantry, Vermont Volunteers."

No cogent reason is apparent why the construction given by the Executive should be disregarded or held erroneous.

It is a well established principle of law that the contemporaneous construction of a statute by the executive officers of a government, whose duty it is to execute it, is entitled to great weight, and should not be disregarded nor overturned, except for cogent reasons, and unless it is clear that such construction is erroneous. *Heath* v. *Wallace*, 138 U. S. 573.

This construction is conformable to the clear purpose of the legislature in enacting the re-instatement law, and is consistent therewith. This law is to be construed so as to carry into effect the intention of the legislature, which is to be ascertained from the language of the Act taken as a whole, and from its application to existing circumstances and necessities. *Legg, Jr.*, v. *Britton*, 64 Vt. 652.

Any other construction would render this Act of the legislature of no practical effect. A statute is to be construed with reference to its manifest object, and if the language is susceptible of two constructions, one of which will carry out and the other will defeat such manifest object, it should receive the former construction. *Ex parte Cohen*, 104 Cal. 524: 43 Am. St. Rep. 127.

It follows, therefore, that when the regiment returned from the United States service, exclusive of the members who were not national guardsmen when they entered that service, it constituted, and was re-instated, as the First Regiment National Guard of Vermont, and the question of reorganization does not arise.

RUSSELL S. TAFT,
JOHN W. ROWELL,
JAMES M. TYLER,
LOVELAND MUNSON,
HENRY R. START,
LAFORREST H. THOMPSON,
JOHN H. WATSON.