AARON H. GROUT, SECRETARY OF STATE *v.* BENJAMIN F. GATES, STATE AUDITOR.

February Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed March 7, 1924.

*Statutes—Effect of Limitation in Statute of Mode in Which Thing is to Be Done—States—"Expenditure"—"Appropriation"—Emergency Board—Such Board May Not Delegate Its Authority to Make Emergency Expenditures—Construction of Statutes—Duties of Emergency Board As to Supervision of Emergency Expenditures—Emergency Board May Not Make An Appropriation of Public Money—State Auditor's Duties Not Merely Ministerial—May Raise Question Whether Money Lawfully Appropriated—An Act of The State Auditor Without Authority of Law Is of No Effect—*

*State Treasurer's Monthly Statement to State Auditor Showing Unauthorized Appropriation Not Conclusive Upon Auditor—Mandamus—When Available—Act Authorizing Emergency Expenditures by Emergency Board Unaffected by Provisions of Appropriation Act—Shortage of Funds for Enforcement of Motor Vehicle Law as ''Unforeseen Emergency''—Emergency Board May Resolve to Make Expenditures Necessitated by Emergency Before Actual Shortage of Funds Exists.*

1. When a statute limits a thing to be done in a particular mode, by necessary implication it negatives the use of any other mode.

2. Under Acts of 1923, No. 7, § 39, giving the emergency board "authority to make any expenditures necessitated by unforeseen emergencies," an "expenditure" is the "act of expending, a laying out of money, disbursement," and is different from an "appropriation," which means "to set apart for, or to assign to, a particular person or use, in exclusion of all others."

3. The emergency board cannot delegate the authority granted it by Acts of 1923, No. 7, § 39, "to make any expenditures necessitated by unforeseen emergencies," and so is not authorized to appropriate òr set apart money to some department or officer of the State to be so expended, although it may select a person to make the expenditures under its direction.

4. In construing a statute, effect should be given, if possible, to every word, clause, and sentence thereof.

5. While the provisions of Acts of 1923, No. 7, § 39 do not necessarily contemplate that the members of the emergency board, when an unforeseen emergency exists, shall themselves perform the detailed work in making the emergency expenditures thereby authorized, and the work may be done through its agent or agents, the statute does contemplate that, in the interest of State economy and governmental efficiency, the board shall take the administration of such work, and that the moneys and appropriations shall be used under its general direction and control and in its official designation, and that the itemized statement required by such section shall be rendered to the auditor of accounts by the board and in its name.

6. A statute should be so construed, if possible, as to carry into effect the legislative intent, with reference to the manifest object to be accomplished by it.

7. In construing a statute, that construction should be adopted, if possible, which will make it consistent with the Constitution.

8. The action of the emergency board, under Acts of 1923, No. 7, § 39, authorizing it "to make any expenditures necessitated by unforeseen emergencies," in attempting by resolution to appropriate and set apart from funds appropriated for its use by the Legislature, certain sums for the current and next succeeding fiscal years, for the use of the Secretary of State in the automobile department, and to add such sums to the sums previously appropriated by the Legislature for use by the Secretary of State in such department, was outside the powers of the board, as the power to appropriate money is legislative in character and under the Constitution (Ch. II, Section 27), was and is exclusively with the General Assembly.

9. Although the auditor of accounts is but a subordinate executive officer, and certain of his duties are purely ministerial, they are not all of that character, but some require the exercise of his judgment and are discretionary, and, in view of the limitation of departments to make expenditures and that the auditor is forbidden by law to draw his warrant except for money lawfully appropriated, he may raise the question of the constitutionality of the law or laws under which it is claimed he is required to draw his warrant for a particular expenditure.

10. An act of the State Auditor without warrant of law is of no effect.

11. Where the emergency board, in attempting to act under Acts of 1923, No. 7, § 39, authorizing it "to make any expenditures necessitated by unforeseen circumstances," appropriated and set apart certain sums for use of the Secretary of State in the automobile department, and the State Treasurer's books showed the amount as credited to the automobile department, and such credit had been certified by the Treasurer to the State Auditor monthly, the provisions of section 40 of such act, making the Treasurer's statement "conclusive and controlling" on the Auditor, "in issuing warrants against the amount of specific appropriations," were inapplicable, because the attempted

appropriation, being without authority in law, was without force, hence he could not be required to issue his warrants against such fund.

12. A writ of mandamus can enforce the performance of only existing duties, and such a remedy is available only where there is a clear legal right without any adequate legal remedy.

13. The operating effect of Acts of 1923, No. 7, § 39, authorizing the emergency board "to make any expenditures necessitated by unforeseen circumstances," is not affected by Acts of 1923, No. 28, § 98, providing that the force and effect of appropriations contrary to or without the intent of the provisions of the last-named act shall be suspended.

14. A large and unforeseen increase in the registration of motor vehicles, in violations of the motor vehicle law, and in accidents to motor vehicles and deaths and injuries therefrom, rendering the appropriation made by the Legislature for use by the Secretary of State in the automobile department inadequate to properly carry on the additional work occasioned that department thereby, constituted an "unforeseen emergency" within the meaning of Acts of 1923, No. 7, § 39, authorizing the emergency board to make expenditures when an unforeseen emergency occurred.

15. Under such circumstances, when the regular appropriation is exhausted, the emergency board may make the lawful expenditures necessary for carrying on the work of the automobile department through its agent or agents, during the continuance of the emergency, and when the emergency is apparent the board may resolve upon such action before the regular appropriation is completely exhausted, to the end that the affairs of the department may be conducted in reliance upon said action.

PETITION for a writ of mandamus, preferred to the Supreme Court for Washington County and heard on the petition and answer at its February Term, 1924. *Petition dismissed.*

*F. C. Archibald,* Attorney General, and *John C. Sherburne* for the petitioner.

A law is presumed to be constitutional; and is to be so treated by all subordinate executive officials until the courts have passed

upon it. *Town of Bennington* v. *Park et al.,* 50 Vt. 178, 191; *Ives* v. *Salisbury,* 56 Vt. 565, 568; *State ex rel. N. O. Canal & Banking Co.* v. *Heard,* 47 La. Ann. 1679, 47 L. R. A. 512, 524; *Thoreson* v. *Board of Examiners,* 19 Utah 18; *People* v. *Salomon,* 54 Ill. 39, 46; *Smythe et al. Agents* v. *Titcomb,* 31 Me. 272; *Tremont School District* v. *Clarke,* 33 Me. 482; *Capito* v. *Topping* (W. Va.), 64 S. E. 845, 22 L. R. A. (N. S.) 1089, 1091; *Port Royal Mining Co.* v. *Hagood* (S. C.), 3 L. R. A. 841, 884; *County Court of Braxton Co.* v. *State of West Virgina,* 208 U. S. 192, 52 L. ed. 450; *Threadgill* v. *Cross,* 26 Okla. 403, 109 Pac. 558, 138 A. S. R. 964; *Board of Liquidation* v. *McComb,* 92 U. S. 541, 23 L. ed. 623; *State* v. *Heard,* 47 La. Ann. 1679, 47 L. R. A. 512; *Denver* v. *Adams Co.,* 33 Colo. 1, 77 Pac. 858; *State* v. *Crease* (Okl.), 114 Pac. 251.

The appropriation to the emergency board made by Acts of 1923, No. 7, § 39, and Acts of 1923, No. 8, § 16, was specific in amount and purpose, and the intent of the Legislature was clear, hence such appropriation is not in contravention of any provision of the Constitution. 36 Cyc. 892; *State* v. *Eggers* (Nev.), 91 Pac. 819, 820; *State* v. *Brian* (Nebr.), 120 N. W. 916; *Campbell* v. *Commissioners, etc.* (Ind.), 18 N. E. 33, 34; *Highgate* v. *State,* 59 Vt. 39; *State* v. *Bordelon,* 6 La. Ann. 68; *State ex rel. Turner* v. *Henderson* (Ala.), 74 So. 344.

Acts of 1923, No. 7, § 39, contained no delegation of legislative authority. It merely gave the emergency board power to determine certain facts, upon which the law itself made action depend. Such agency for the purpose of determining a fact is held not to be a delegation of legislative authority. *Marshall Field & Co.* v. *Clark,* 143 U. S. 649, 36 L. ed. 294; *Port Royal Mining Co.* v. *Hagood* (S. C.), 3 L. R. A. 841; *Pueblo County Court* v. *Smith* (Colo.), 33 L. R. A. 465, 466; *United States* v. *Grimand,* 220 U. S. 506, 55 L. ed. 563; *Elwell* v. *Comstock* (Minn.), 109 N. W. 698, 7 L. R. A. (N. S.) 621; *Louisville H. & St. L. Ky. Co.* v. *Lyons,* 155 Ky. 396, 159 S. W. 971, 48 L. R. A. (N. S.) 667; *Highgate* v. *State of Vermont,* 59 Vt. 39; *People* v. *Kipley,* 171 Ill. 44, 41, L. R. A. 775.

The finding of an emergency and the amount required to take care of it is, under the law creating the emergency board, wholly a discretionary matter with said board, and cannot be reviewed by the Supreme Court except for abuse of discretion.

Acts of 1923, No. 7, §§ 38, 39; 4 C. J. 796, § 2753; *Cherry* v. *Bowman* (Ark.), 152 S. W. 133; *Gardner* v. *City of Chicago* (Ill.), 79 N. E. 624; *Carey* v. *Thompson*, 66 Vt. 665.

Statutes passed at the same session, relating to the same subject-matter, are to be construed together and harmonized, if possible. *Commonwealth* v. *King*, 202 Mass. 279; *Peavey* v. *Mc-Combs*, 26 Idaho 143; *Board of Council of Danville* v. *Raum*, 141 Ky. 198, 204; *Mayes* v. *Bassett*, 17 N. M. 193, 204; *Gasconade County* v. *Gordon*, 241 Mo. 569; *State ex. rel. Oregon R. & N. Co.* v. *Clausen*, 63 Wash. 535; *Bird* v. *State*, 131 Tenn. 518, 175 S. W. 554, Ann. Cas. 1917A, 634; *State* v. *C. V. Ry. Co.*, 81 Vt. 463; *Vaughn* v. *Roberts* (Ky.), 253 S. W. 733, 734; *Kinney* v. *Eidenborn* (La.), 91 So. 712; *Dade County* v. *City of Miami* (Fla.), 82 So. 354; *People* v. *Wabash R. R. Co.* (Ill.), 114 N. E. 552; *State* v. *Prairie Oil & Gas Co.* (Okl.), 167 Pac. 756; *City of Birmingham* v. *Southern Exp. Co.*, 164 Ala. 529; *State* v. *Stanley*, 82 Vt. 37; *State ex rel. Jones* v. *Drainage Dist.*, 252 Mo. 345; *State ex rel. Mo. P. R. R. Co.* v. *Clarke*, 98 Neb. 566; *Cleveland, etc., R. R. Co.* v. *Blind*, 192 Ind. 398.

The practical construction placed upon an act by executive officers and departments, while not controlling, is entitled by law to be considered by the court. 25 R. C. L. 1043; *Re National Guard of Vermont*, 71 Vt. 493; *United States* v. *Vowell*, 5 Cranch, 369, 3 L. ed. 128; *First Nat'l Bank* v. *United States*, 206 Fed. 374, 46 L. R. A. (N. S.) 1139; note 7, 25 R. C. L., p. 1043; 36 Cyc. 1140.

A petition for mandamus will lie to compel a future act, when the officer required by law to perform that act has clearly and unequivocally announced his intention to refuse to act when the time comes. *State ex rel. Morris* v. *Wrightson*, 5 N. J. Law, 126, 28 Atl. 56, 22 L. R. A. 548; 26 Cyc. 181; *Rizzer* v. *People*, 18 Colo. App. 40, 69 Pac. 315; *State ex rel. Hanna* v. *Rahway*, 33 N. J. Law, 110; *United States* v. *Auditors, Town of Brooklyn*, 9 Fed. 473, 475; *Attorney General* v. *Boston*, 123 Mass. 460, 474; *Haddox et al.* v. *Graham & Knox*, 2 Metc. (Ky.), 56, 71; Horton, *Bliss & Co.* v. *Comptroller General*, 4 S. C. 431; *Chicago K. & W. R. Co.* v. *Horis et al.* (Kan.), 30 Pac. 456, 459; *State ex rel. Marquette* v. *Bushhausen* (Neb.), 68 N. W. 950; *City of Austin et al.* v. *Cahill* (Tex.), 88 S. W. 543; *State ex rel. Lloyd* v. *Ratwell*, 15 Mont. 29, 37 Pac. 845; *North Carolina Public*

*Service Co.* v. *Southern Power Co.,* 104 S. E. 872; *State* v. *Weston,* 31 Mont. 218, 78 Pac. 487; *State* v. *Metcalf* (S. D.), 100 N. W. 923, 67 L. R. A. 331; *In re McGrath,* 178 N. Y. S. 231; *Sampson* v. *Grand Isle,* 78 Vt. 383, 391; *Board of Liquidation* v. *McComb,* 23 L. ed. 623, 628.

*George L. Hunt* for the petitionee.

The State Auditor is not merely a ministerial officer, but is charged with the exercise of discretion, although it is not binding upon the court when based upon his interpretation of a statute. *State* v. *Howard,* 83 Vt. 6.

The finding of an unforeseen emergency by the emergency board is not conclusive, as the statute does not make the action of the board dependent upon its declaration of the existence of an unforeseen emergency, but rather upon the existence in fact of the unforeseen emergency. Acts of 1923, No. 7, § 39; *San Christina Investment Co.* v. *San Francisco* (Cal.), 141 Pac. 384, 52 L. R. A. (N. S.) 676; *Atlanta* v. *Scott* (Ga.), 111 S. E. 426; *Keyes* v. *San Francisco* (Cal.), 173 Pac. 475; *Stern* v. *Spokane* (Wash.), 111 Pac. 231.

An unforeseen emergency, within the meaning of Acts of 1923, No. 7, § 39, is a situation, which, having the requisite elements of an emergency, it cannot be said that the Legislature could reasonably have foreseen, such as casualties by fires, etc., *Church* v. *Harley* (Mo.), 39 L. R. A. (N. S.) 248.

Any other construction gives no effect to the word "unforeseen," and in construing a statute, effect must be given to every part of it, if possible. *Cole* v. *Walsh,* 97 Vt. 256, 122 Atl. 664.

The words "unforeseen emergency" cannot contemplate conditions which necessarily exist and inhere in the work of administration, and which will always be present to a greater or less extent. *United States* v. *Sheridan-Kirk Contract Co.,* 149 Fed. 809; *Ellis* v. *United States,* 206 U. S. 246, 51 L. ed. 1047; *Burr* v. *San Francisco* (Cal.), 17 A. L. R. 581; note, 17 A. L. R. 586; *San Christina Invest. Co.* v. *San Francisco, supra; Atlanta* v. *Scott* (Ga.), 111 S. E. 426; *First Nat'l Bank* v. *Van Buren School Twp.* (Ind.), 93 N. E. 863; *Parker* v. *Monroe* (La.), 55 So. 587; *Mallon* v. *Water Commissioners* (Mo.), 128 S. W. 764; *People* v. *Lee Wah* (Cal.), 11 Pac. 851; *Colfax County* v. *Butler County* (Neb.), 120 N. W. 444.

STATEMENT BY CHIEF JUSTICE WATSON: This is a complaint for mandamus brought by the relator as Secretary of State to the defendant as Auditor of Accounts in and for the State. The facts here stated are given by paragraphs numbered as in the complaint.

3. That the relator as Secretary of State is at the head of the automobile department and has charge of the registration of motor vehicles, the licensing of operators, and, by way of law enforcement, the investigation of offenses against the motor vehicle laws and the suspension of operator's licenses, and in the performance of such duties employs clerks, inspectors and examiners.

4. That in the calendar year 1922 pleasure vehicles and trucks to the number of 43,881, motor cycles to the number of 856, and dealers to the number of 305 were registered, motor vehicles to the number of 5,408, were re-registered, and operator's and chauffeur's licenses to the number of 50,897, certificates of hire to the number of 154 and zone licenses to the number of 38 were issued, yielding a gross revenue of $781,982.00; that in the calendar year 1923 pleasure vehicles and trucks to the number of 52,776, motor cycles to the number of 839, and dealers to the number of 360 were registered, motor vehicles to the number of 6,983 were re-registered, and operator's and chauffeur's licenses to the number of 59,507, certificates of hire to the number of 173 and zone licenses to the number of 50 were issued, yielding a gross revenue of $938,860.30—thus showing an increase in 1923 over 1922 of 8,895 registrations of pleasure vehicles and trucks, or 20.2%, of 1,575 re-registrations or 29.1%, and 8,610 operator's and chauffeur's licenses or 16.9%, and an increase in revenue of $156,878.00 or 20%; and that the above mention increase in volume of business required an increase in the number of clerks and employees over the number employed in 1922 to properly care for the same.

5. That during the season of 1923 the violations of the motor vehicle laws multiplied and increased; that during the year 54 persons were killed, 1,060 persons were injured, and property to the value of $229,290.00 was damaged in automobile accidents, which figures show an increase of approximately 50% over 1922 and of approximately 100% over 1921; that during

1923 over 4,200 automobile accidents were reported as required by law, an increase of 700 over reported accidents for 1922; that the small number of inspectors and examiners employed by the relator in 1923 were unable to cope with, or prevent the violation of the motor vehicle laws, or the careless and negligent operation of automobiles causing accidents, or the presence of intoxicated persons driving motor vehicles upon the highways of the State; that the safety of the public using the highways of the State demanded and will continue to demand a much more stringent law enforcement through an increased number of inspectors and examiners; that the violations of motor vehicle laws in this paragraph referred to was a condition existing and present throughout the latter part of the summer of 1923, and especially through the month of October in that year.

6.  That the cost of the automobile department for the fiscal year ending June 30, 1922, was $67,677.10, and the cost of the fiscal year ending June 30, 1923, was $65,447.27; that the General Assembly of 1923 appropriated for said department for the fiscal year ending June 30, 1924, the sum of $66,000.00, and for the fiscal year ending June 30, 1925, the sum of $68,000.00, and in addition the sum of $1,500.00 for each of said years for salary to the relator as registrar.

7.  That the aforesaid appropriations were and will be inadequate for the administration of said department during the current fiscal year and during the next fiscal year respectively, and the appropriation for the current year will be exhausted not later than March 15, 1924; that an interruption of the service of said department will result in the disbursal and disorganization of its working force, the loss of experienced service, the resumption of work with inadequate and inefficient help, to the dissatisfaction and inconvenience of the public and with increased expense to the State.

8.  That the relator, when confronted with the conditions above mentioned during the summer and early fall of 1923, brought the same to the consideration of the emergency board created by section 38 of number 7 of the Acts of 1923; that the aforesaid conditions and facts were laid before and considered by said emergency board on October 26, 1923, and after full consideration thereof, said board by unanimous vote adopted a reso-

lution, a copy of which was furnished to the relator and to the State Treasurer; that said resolution was as follows:

"*Wheras,* It appears that there has been a large and unforeseen number of motor vehicles registered this year over last year, with the probability of a further large increase during the next fiscal year, which increase was wholly unexpected by the last Legislature, and will require an increased number of employees in said department to render prompt and efficient service in registration and delivery of number plates and in the enforcement of the laws, and

*Whereas,* It further appears that there have been approximately thirty-four hundred automobile accidents reported to the Secretary of State during the present calender year, resulting in forty fatalities, which serve to emphasize the lack of and the need of adequate law enforcement, and

*Whereas,* It further appears that, unless an ·increased appropriation is made, law enforcement and the efficiency of the registration bureau will be crippled, now

*Therefore, Be It Resolved,* That the emergency board created · by section 38 of number 7 of the Laws of 1923, duly assembled on the call of His Excellency, the Governor of Vermont, deem the premises above set forth to constitute an emergency for which said board should provide, and

That the sum of thirty-two thousand dollars ($32,000.00) for the current fiscal year, and the sum of forty-two thousand dollars ($42,000.00) for the fiscal year ending July 1, 1925, be and the same hereby are appropriated and set apart for the years named, out of the general funds of the State of Vermont or any fund not otherwise appropriated, for the use of the Secretary of State in the automobile department, including enforcement of such laws of the State as come under his jurisdiction, and said sums are hereby added to the sums appropriated in section 59 (a) 1, and 59 (a) 2 of number 28 of the Laws of 1923, respectively, and

That the credit of the State be, and it is hereby pledged in a sum not exceeding the sums named in the last preceding paragraph for the purposes therein named, and that the State Treasurer provide funds for the purposes herein indicated, not to exceed the sums hereinbefore named, and said Treasurer is hereby authorized to furnish and pay out said sums, or so much thereof as may be needed, on the warrants of the State Auditor, which warrants said Auditor is hereby authorized to draw, on requisition of the Secretary of State."

9. That "The General Assembly appropriated the sum of $100,000.00 to the uses of said emergency board for each fiscal year of the current biennial period, or so much thereof as may be necessary for emergency purposes."

10. That on the 30th day of November, 1923, said State Treasurer, pursuant to said resolution, credited on his books the said sum of $32,000.00 to the relator for automobile registration for the fiscal year ending June 30, 1924, and that on the first day of each month thereafter said Treasurer has furnished the relator and the defendant a record showing such credit.

11. That, because of the law under which automobile registrations expire on December 31, of each year, it is necessary to administer the affairs of, and make plans for, the automobile department on the basis of the calender year rather than the fiscal year; that any law enforcement program covering the automobile running season in Vermont overlaps the beginning of each fiscal year, and the expenses covering any one automobile running season, must, of necessity be drawn from the appropriations of two fiscal years. That it is necessary to take time and plan far in advance, over at least two fiscal years, in laying out a law enforcement program; that if any law enforcement program is to be put into effect for the year 1924, it must be paid for out of the current fiscal year's appropriation and the appropriation for the fiscal year beginning July 1, 1924.

12. That on the 29th day of January, 1924, the relator was informed by the defendant that he would decline to audit and issue his warrants in payment of bills connected with the automobile department to be paid from said appropriation of $32,000.00 referred to in said resolution of said emergency board, and that he was that day writing a letter to His Excellency, the Governor; and said defendant then and there gave him a copy of said letter to the Governor; that the defendant still persists in his intention to decline to so audit and issue his warrants in payment of such bills.

In the letter to the Governor mentioned, the Auditor stated at length the reasons why he refuses to audit and issue his warrants in payment of bills as above stated.

13. That if the defendant persists in his refusal and the relator delays, until a bill for payment from said appropriation of $32,000.00 is presented and action thereon specifically de-

clined by the defendant, in seeking relief in this Court, irreparable injury will result, for the reasons aforesaid, wherefore the matters involved in this complaint ought to be settled and determined by this Court prior to the time when said original appropriation is exhausted and prior to the time when the defendant shall actually refuse to issue his warrant in payment of any requistion of your relator for the expenses of said department from said appropriation of the emergency board.

14. That the relator has no other adequate remedy at law or in equity. The prayer of the complaint is that a writ of mandamus may issue from this Court to the Auditor of Accounts, commanding him, after the appropriation of $66,000.00 for automobile registrations for fiscal year ending June 30, 1924, shall have been exhausted, to audit and issue his warrants in payment of all proper bills of the relator as Secretary of State in connection with the automobile department from said $32,000.00 appropriation of the emergency board, and after said appropriation of $68,000.00 for automobile registration for the fiscal year ending June 30, 1925, shall have been exhausted, to audit and issue his warrants in payment of all proper bills of the relator as Secretary of State in connection with the automobile department from said $42,000.00 appropriation of the emergency board.

The defendant, answering the allegations of the complaint, admits the allegations of paragraphs 4, 5, 6, 7, 8, 10, 11, 12, 13, and 14. Further answering, the defendant says that the allegations of paragraph 9 of the complaint are matters of law; and that by law there are no funds appropriated to the use of said emergency board for either fiscal year of the current biennial period; that the defendant does now decline and will continue to decline to issue his warrants in payment of any requisition of the relator from so-called appropriations of said emergency board unless and until he shall be thereunto commanded by this Court; that the facts alleged in the complaint and admitted by the answer do not amount to an unforeseen emergency within the meaning of section 39 of number 7 of the Acts of 1923, and the withdrawal of money from the treasury under and in pursuance of said resolution of said emergency board is contrary to Section 27, Ch. 2, of the Constitution; that the defendant is without authority to issue warrants for expenditures made by said emer-

gency board under section 39 of said Acts of 1923, including the expenditures purporting to be authorized by said resolution of that board.

WATSON, C. J. The emergency board was created by section 38 of number 7 of the Laws of 1923, to consist of the Governor, the chairman of the finance committee of the Senate, the chairman of the appropriation committee of the Senate, the chairman of the ways and means committee of the house of representatives and the chairman of the appropriation committee of the house of representatives; (with a proviso not material to notice further). The Governor shall be chairman and the commissioner of finance the secretary of the board. The latter is required to keep minutes of each meeting of the board in a book kept for that purpose and such minutes shall be a public record. By section 39, "Said board shall have authority to make any expenditures necessitated by unforseen emergencies and may pledge the credit of the State for the same." The section then proceeds with specific provisions relating to repairing or rebuilding buildings or property of the State damaged by fire, followed by the provisions: "All sums of money used under the provisions of this section are hereby appropriated for the purposes mentioned in this section. Such monies and appropriations shall be used as said board may direct. Said board shall render an itemized statement, accompanied by vouchers, of the expenditures of all such money and the Auditor of Accounts shall print such statement in his biennial report." And by section 16 of number 8 of the laws of that year, section 39 of Act number 7 was amended by adding a new sentence to read as follows: "Said board shall not expend more than one hundred thousand dollars in any one year."

The emergency board professed to act upon the provisions quoted above from section 39, in adopting its resolution of October 26, 1923 (fully set forth in the statement of the case), and in its subsequent proceedings thereunder. Whether the board acted in the way provided in that section in cases of unforeseen emergencies, is discussed further on. While the defendant admits the allegations of the complaint contained in paragraphs 4, 5, 6, 7, 8, 10, 12, 13, and 14, he says the allegations of paragraph 9, "that the general assembly appropriated the sum

of $100,000.00 to the uses of such emergency board for each fiscal year of the current biennial period, or so much thereof as may be necessary for emergency purposes," are matters of law, and asserts that in law there are no funds appropriated to the use of that board for either fiscal year of the current biennial period; that he now declines and will continue to decline to issue. his warrant in payment of any requisition of the relator from said so-called appropriations of said board unless and until he shall be thereunto commanded by this Court. The defendant further asserts in his answer and in arguing the case that the facts alleged in the complaint and admitted by the answer do not amount to an unforeseen emergency within the meaning of said section 39; and asserts in his answer that the withdrawal of money from the treasury under and in pursuance of said resolution of the emergency board is contrary to section 27, Chapter II, of the Constitution; and that the defendant is without authority to issue warrants for expenditures made by said board under section 39 of number 7, Acts of 1923, including the expenditures purporting to be authorized by its aforesaid resolution.

The proper construction of the provisions of section 39, on the strength of which the emergency board professed to act, is therefore of paramount importance in the solution of the questions before us.

[1]   Adverting to the quotations given from section 39, it will be noted that by those provisions the statute has limited the thing to be done in a particular mode, and this being so, it includes a negative of any other mode. *Raleigh & Gaston R. R. Co.* v. *Reid,* 13 Wall. 269, 20 L. ed. 570. The same principle is laid down in *Smith* v. *Stevens,* 10 Wall. 321, 19 L. ed. 933, where the Court said: "It needs no argument or authority to show that the statute, having provided the way in which these half-breed lands could be sold, by necessary implication prohibited their sale in any other way." In *Zottman* v. *San Francisco,* 20 Cal. 96, the court said: "The rule is general and applies to the corporate authorities of all municipal bodies; where the mode in which their power on any given subject can be exercised is prescribed by their charter, the mode must be followed. The mode in such cases constitutes the measure of the power * * *. Aside from the mode designated, there is a want of all power on the subject. This is too obvious to require argument, and so are

all the adjudications.'' To the same effect are *Thomason* v. *Ruggles,* 69 Cal. 465, 474, 11 Pac. 20; *Heidelberg* v. *St. Francois Co.,* 100 Mo. 69, 75, 12 S. W. 914; *Douglas County* v. *Keller,* 43 Nebr. 635, 644, 62 N. W. 60; *Page* v. *Belvin,* 88 Va. 985, 990, 14 S. E. 443. And in *Taylor* v. *Taylor,* 66 W. Va. 238, 19 Ann. Cas. 414, it was held that when a statute limits a thing to be done in a particular manner, or by a prescribed person or tribunal, there is an implication that it shall be done in no other manner, nor by a different person or tribunal.

[2] The making of expenditures and appropriating public money are different things. The former is the ''act of expending; a laying out of money; disbursement.'' The latter is: ''to set apart for, or assign to, a particular person or use, in exclusion of all others.'' Webster's New Int. Dict. See *Brown* v. *Honiss,* 74 N. J. Law, 501; *Niles School* v. *Bailey,* 161 Mich. 193; *Ainsworth* v. *Dean,* 21 N. H. 400.

[3] It follows that by section 39 the emergency board is authorized to *make any expenditures necessitated by unforeseen emergencies,* but it alone is charged with the responsibility of making such expenditures, which it cannot delegate; and so the board is not authorized to appropriate or set apart money to some department or officer of the State to be so expended, although it may select a person connected therewith to make the expenditures under its direction as hereinafter stated.

[4] This is made certain from the facts that by the same section of the statute all sums of money used under the provisions of that section were thereby specifically appropriated for the purposes mentioned in the section; that such moneys and appropriations shall be used as said board may direct; that said board shall not ''expend'' more than one hundred thousand dollars in any one year; and said board shall render an itemized statement, accompanied by vouchers, of the expenditures of all such money and the Auditor of Accounts shall print such statement in his biennial report. These provisions, taken with the one empowering the board to make such unforeseen emergency expenditures, can be given no construction as to the mode of operation, other than that provided by the statute, without doing violence to the rule requiring effect to be given, if possible, to every word, clause, and sentence of a statute. *State* v. *Rutland R. R.*

*Co.,* 81 Vt. 508, 71 Atl. 197; *Petraska* v. *National Acme Co.;* 95 Vt. 76, 113 Atl. 536.

[5, 6] It hardly seems necessary to state that the statute does not necessarily contemplate that the members of the emergency board, when an unforeseen emergency exists, shall themselves attend to or perform the detailed work in making such unforeseen emergency expenditures. Such detailed work may be done by the board through its agent or agents, the personnel thereof being within the control of the board. But the statute does contemplate that, in the interest of State economy and governmental efficiency, the board shall take the administration of the particular work there entrusted to it, and that the moneys and appropriations shall be used under the general direction and control of the board and in its official designation; and that the itemized statement, accompanied by vouchers, required by the last clause of the section, shall be rendered to the Auditor of Accounts by the board itself and in its name. Thus construed the statute carries into effect, as it should, the intention of the Legislature with reference to the manifest object to be accomplished by it. *In re National Guard,* 71 Vt. 493, 45 Atl. 1051.

[7] In this connection we must not overlook the rule making it our duty to adopt a construction of the provisions of section 39, if possible, which will make them consistent with the Constitution. *In re Barre Water Co.,* 62 Vt. 27, 20 Atl. 109, 9 L. R.'A. 195; *Cady, Admr.* v. *Lang,* 95 Vt. 287, 115 Atl. 140. The Supreme Court of the United States, speaking through Mr. Justice White, says this rule is elementary and "plainly must mean that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *U. S.* v. *Delaware & H. Co,* 213 U. S. 366, 53 L. ed. 836, 849. To the same effect are *Carey* v. *South Dakota,* 250 U. S. 118, 63 L. ed. 886; and *United States* v. *Standard Brewery,* 251 U. S. 210, 64 L. ed. 229.

[8] This rule of construction is peculiarly applicable to the provisions of the statute under consideration. The Constitution (Ch. II, Sec. 27) provides: "No money shall be drawn out of the treasury, unless first appropriated by act of legislation." The essential adherence to this constitutional requirement is shown by the successful endeavor of the Court in *Highgate* v.

*State,* 59 Vt. 39, 7 Atl. 898, to bring the appropriations there involved within it. From what we have already said, it is seen that all the sums of money used under the provisions of section 39, are by the law of that section specifically appropriated for the purposes therein mentioned, and consequently are within the purview of the clause of the Constitution set forth above. But it follows that the emergency board was without power to appropriate and set apart, as it undertook to do in and by its resolution of October 26, 1923, the sums of $32,000.00 for the current fiscal year, and $42,000.00 for the fiscal year ending July 1, 1925, out of the general funds of the State or any funds not otherwise appropriated, for the use of the Secretary of State in the automobile department, and adding said sums to the sums appropriated in section 59, (a) 1, and (a) 2, of number 28 of the Laws of 1923, respectively. These attempted acts by that board were legislative in character, and the power essential to their lawful performance was and is exclusively with the General Assembly.

[9, 10] It is said, however, that the act which the relator seeks to compel, being a mere ministerial duty, the defendant, a subordinate executive officer, cannot raise a question as to the constitutionality of the law or laws under which it is claimed the duty is to be performed. True it is, as was said in *Clement* v. *Graham,* 78 Vt. 290, 63 Atl. 146, Ann. Cas. 1913E, 1208, that the office of Auditor of Accounts is a branch of the executive department of State, and it is also true, as there held, that the incumbent of the office has certain purely ministerial public duties to perform, which appertain to his office; but not all of his duties are of that character. He is a constitutional officer, elected biennially by the freemen of the State upon the same ticket as is the Governor, the Lieutenant-Governor, the Secretary of State and the Treasurer. This Court said in *State* v. *Howard,* 83 Vt. 6, 74 Atl. 392, that: "The primary purpose of the Auditor's office is to safeguard the funds of the State," and that "the powers of the Auditor are determined by statutory provisions." It is further said in that case: "A ministerial duty is one regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist * * * *. If the duty is one that requires the exercise of judgment in its performance it is not ministerial but

discretionary. A discretionary duty may be executive or judicial, according to the nature of the subject-matter.''

The character of the duties of the Auditor in the respect here in question, may be determined by an examination of the provisions of certain sections of Act number 7, of which Act section 39 now under consideration forms a part: By section 9, ''No department shall expend or authorize an expenditure in excess of the amount appropriated therefor for any fiscal year;'' by section 13, ''The gross amount of money received, in their official capacities, by every administrative department, board, officer or employee, from whatever source, shall be paid forthwith into the State treasury * * * *. Such moneys shall be credited to such fund or funds as are now or may hereafter be designated for the deposit thereof. Money so paid and all moneys belonging to or for the use of the State shall not be expended or applied by any department, board, officer or employee, except in pursuance of an appropriation made by law and upon warrant of the Auditor;'' by section 27, ''except in the case of funds held by the State in trust, no moneys shall be paid out of the treasury of the State except on specific appropriation made at each biennial session of the general assembly or any special session within the biennial period. The Auditor of Accounts shall not draw his warrant upon the treasurer of the State, except for the payment of specific appropriations duly made in pursuance of the provisions of this section;'' and by section 40, ''in addition to the duties now prescribed by law, it shall be the duty of the State Treasurer to keep an accurate account in books of account, * * * * of all moneys received by the State from whatever source, and of all moneys withdrawn from the treasury of the State upon warrants issued by the Auditor of Accounts, together with an accurate account of the sums appropriated by the general assembly, and the purposes for which the same have been appropriated, and the treasurer shall furnish a record thereof and of the amounts withdrawn from the treasury in pursuance of each specific appropriation, the balance thereof remaining, together with such other information as may be required, to the Auditor of Accounts, monthly, on the first day of each month. Such statement shall be conclusive and controlling on the Auditor of Accounts, in issuing warrants against the amount of specific appropriations. The account so kept by the Treasurer shall be

the only accounts kept by the State for such purposes and shall be controlling and conclusive upon all departments and officers.''

The limitation of the authority of departments to make expenditures, as prescribed in section 9, and the inhibitions contained in sections 13 and 27, are each and all in conformity to the clause of the Constitution forbidding money to be drawn out of the treasury unless first appropriated by act of legislation, and no one of those statutory provisions can be disregarded without violating the Constitution in this respect. In addition to this, if the Auditor acts without warrant of law his action is of no effect. *State* v. *Howard, supra.*

The foregoing provisions together with the information required by section 40 to be given on the first day of each month by the Treasurer to the Auditor, constitute a three-fold safeguard of the funds of the State, and in performing the duties consequent thereon which devolve upon the Auditor, we think it clear that he is required to exercise judgment, and therefore his duties are discretionary. See *State* v. *Howard, supra.*

We do not understand that defendant questions in argument the constitutionality of the statute under consideration; but he asserts, in effect, that the Constitution has a bearing on the construction which should be given to the statute, and also upon the validity of acts done under it. With the soundness of this assertion there should seem to be no room for doubt.

[11, 12]   It is urged that the Auditor cannot refuse payment of requisitions against the emergency board's award because (a) the Treasurer's books show the amount credited to the automobile department, and such credit has been certified to the Auditor on the first day of each month since and including December last; and (b) such acts of the Treasurer are conclusive upon the Auditor in the premises. The fallacy of this argument is seen from the particular provisions of section 40, by which the duties of the Treasurer in this respect are defined and also the extent of the conclusiveness of the statement by him to the Auditor. Nothing appearing to the contrary, it is presumed that the books were accurately kept by the Treasurer and that monthly statements were made by him to the Auditor, all in accordance with the requirements of that section. This being so, the statements to the Auditor showed the source of all moneys received by the State, and all moneys withdrawn upon warrants

issued by the Auditor, together with an accurate account of the sums appropriated by the general assembly and the purposes for which the same were appropriated, and the amounts withdrawn in pursuance of each specific appropriation, and the balance thereof remaining. Such statements must therefore have shown that the money turned over to the automobile department under the resolution of October 26, 1923, of the emergency board, was not appropriated by the General Assembly, but instead was attempted to be appropriated by that board only. "Such statement," says the statute, "shall be conclusive and controlling on the Auditor of Accounts, in issuing warrants against the amount of specific appropriations." As before observed, this attempted appropriation by the emergency board was without authority in law, and consequently was without force; and there is no law authorizing the Auditor to issue his warrant or warrants against it in payment of any requisition or requisitions of the relator. "A writ of mandamus can enforce the performance of only existing duties. It can neither create new duties nor require of a public officer more than the law has made it his duty to do." *Page* v. *McClure*, 79 Vt. 83, 64 Atl. 451. Such a remedy is available only where there is a clear legal right without any adequate legal remedy. *Bankers' Life Ins. Co.* v. *Howland*, 73 Vt. 1, 48 Atl. 435, 57 L. R. A. 374.

[13] On careful examination of the question, we are of the opinion that the operating effect of section 39 of number 7 is not affected by section 98, number 28, laws of that year.

[14, 15] The foregoing is determinative of this case and the complaint will have to be dismissed. We would ordinarily end our inquiry here without considering the question presented in argument as to the existence of such an emergency as furnishes a lawful basis for the exercise of the powers of the emergency board granted by the first clause of section 39 of the statute. But the question is one of great importance to the public in the administration of the affairs of State, and it having been fully argued, it is thought best to indicate the views of the Court on that question. A majority think and so hold that the record discloses an unforeseen emergency in contemplation of the statute. In view of such emergency when the regular appropriation for the current fiscal year is exhausted, the board can step in and make the lawful expenditures necessary for carrying on the work

of the automobile department through its agent or agents as ·aforesaid, during the continuance of the emergency; and for that purpose may expend such part of $100,000.00 as may be required. And this action, the board can' resolve upon now, to the end that the affairs of the department may be conducted in reliance upon ·said action.

The importance and difficulty of the questions here involved are such that the complainant was justified in bringing this action, and the defendant was equally justified in defending it. We therefore assume that the expense on both sides, including counsel fees, will be, as they should, paid by the State.

*Complaint dismissed, without costs to either party.*

NOTE—All the Justices concurred in the main portion of the opinion. On the question of whether an emergency existed, the decision was only by a majority, but the Court has failed to designate which of the Justices concurred or dissented on that phase of the case.